**49D05-2408-CT-040017**

Marion Superior Court 5

Filed: 8/30/2024 8:25 PM
Clerk
Marion County, Indiana

| | | | |
|---|---|---|---|
| STATE OF INDIANA | ) | | MARION COUNTY SUPERIOR COURT |
| | ) | SS | CIVIL DIVIDION |
| COUNTY OF MARION | ) | | CAUSE NO._____ |

LUCRETIA CLAY, DEMETHRICE CLAY,           )
child one by LUCRETIA CLAY, his next friend  )
HENRY MCNEAL III, child two by LUCRETIA    )
CLAY, his next friend, and HARRISON         )
MCNEAL, child three by LUCRETIA            )
CLAY, his next friend                       )
                                            )
        Plaintiff,                          )
                                            )
    v.                                    )
                                            )
ANDREW THORUP, in his individual and official  )
Capacity, KHALID BROOKS, in his individual     )
And official capacity, THE CITY OF LAWRENCE, )
LAWRENCE POLICE DEPARTMENT, THE CITY )
OF INDIANAPOLIS, THE CITY OF LAWRENCE )
EMT, AXON ENTERPRISE INC, THE STATE OF )
INDIANA, INDIANAPOLIS METROPOLITAN      )
POLICE DEPARTMENT, AND THE              )
INDIANAPOLIS METROPOLITAN POLICE        )
DEPARTMENT INMATE TRANSPORT OFFICER )
        Defendants,                         )

---

    **TO DEFENDANT:**    **City of Lawrence**

                              **9001 E. 59th St.**

                              **Lawrence, Indiana, 46216**

You are hereby notified that you have been sued by the person named as Plaintiff(s) and in the Court indicated above.

    The nature of the suit against you is stated in the Complaint which is attached to this summons. It also states the relief sought or the demand made against you, by the Plaintiff.

    An answer or other appropriate response in writing to the complaint must be filed either by you or your attorney within twenty (20) days, commencing the day after you receive this summons, (or twenty-three (23) days if this Summons was received by mail), or a judgment by default may be rendered against you for the relief demanded by Plaintiff.

    If you have a claim for relief against Plaintiff arising from the same transaction or occurrence, you must assert it in your answer.

DATED: _____ 9/3/2024

_Katherine Sweeney Bell_ (Seal)
CLERK, Marion County Superior Court

**(The following manner of service of summons is hereby designated)**

\_\_\_\_\_ Registered or certified mail

\_\_\_\_\_ Service at place of employment, to wit:

\_\_\_\_\_Service on individual – (Personal or copy) at above address.

\_\_\_\_\_Service on agent. (Specify)

\_\_\_\_\_Other Service. (Specify)

MARION COUNTY COURTS
SEAL
INDIANA

Lucretia A. Clay
**Pro se**
1114 W. 8th St.
Muncie IN, 47302
(317) 732- 7597

**CERTIFICATE OF MAILING**

I hereby certify that on the_____ day of_____, 20___, I mailed a copy of the Complaint to the Defendant, City of Lawrence, by certified mail, requesting return receipt, at the address furnished by the Plaintiff

_____

**Lucretia A. Clay**

DATED: _____        By: LUCRETIA A. CLAY

I hereby certify that the attached return receipt was received by me showing that the summons and a copy of the Complaint mailed to Defendant was accepted by the Defendant on the_____ day of_____, 20___.

     I hereby certify that the attached return receipt was received by me showing that the summons and a copy of the Complaint was not accepted on the _____ day of_____, 20___.

     I hereby certify that the attached return receipt was received by me showing that the Summons and a copy of the Complaint mailed to Defendant, _____ was accepted by _____ on behalf of said Defendant on the_____ day of_____, 20___.

_____

**CLERK, Marion County Superior Court**

By: _____
**Deputy**

**49D05-2408-CT-040017**

Marion Superior Court 5

Filed: 8/30/2024 8:25 PM
Clerk
Marion County, Indiana

| | | | |
|---|---|---|---|
| STATE OF INDIANA | ) | | MARION COUNTY SUPERIOR COURT |
| | ) | SS | CIVIL DIVIDION |
| COUNTY OF MARION | ) | | CAUSE NO._____ |

|  |  |
|---|---|
| LUCRETIA CLAY, DEMETHRICE CLAY, | ) |
| child one by LUCRETIA CLAY, his next friend | ) |
| HENRY MCNEAL III, child two by LUCRETIA | ) |
| CLAY, his next friend, and HARRISON | ) |
| MCNEAL, child three by LUCRETIA | ) |
| CLAY, his next friend | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ANDREW THORUP, in his individual and official | ) |
| Capacity, KHALID BROOKS, in his individual | ) |
| And official capacity, THE CITY OF LAWRENCE, | ) |
| LAWRENCE POLICE DEPARTMENT, THE CITY | ) |
| OF INDIANAPOLIS, THE CITY OF LAWRENCE | ) |
| EMT,  AXON ENTERPRISE INC, THE STATE OF | ) |
| INDIANA, INDIANAPOLIS METROPOLITAN | ) |

**JURY DEMAND REQUESTED**

POLICE DEPARTMENT, AND THE                    )

INDIANAPOLIS METROPOLITAN POLICE              )

DEPARTMENT INMATE TRANSPORT OFFICER)

              Defendants,                    )

## **COMPLAINT FOR DAMAGES**

Comes now the plaintiffs, Lucretia Clay, by way of Pro se; Demethrice Clay, a minor by his mother and next best friend; Henry McNeal III, a minor by his mother and next best friend; Harrison McNeal, a minor by his mother and next best friend, against the Defendants: Andrew Thorup, Khalid Brooks, The City of Lawrence Police Department, The city of Lawrence, The City of Lawrence EMT, The City of Indianapolis Police Department (collectively "IMPD"), The City of Indianapolis, and The State of Indiana , and alleges and asserts the following:

## **PARTIES**

1.) That at all times mentioned herein, Plaintiff Lucretia Clay, was an individual residing in the State of Indiana, City of Indianapolis, County of Marion.

2.) That at all times mentioned herein, Plaintiff, Demethrice Clay, was n minor residing in the State of Indiana, City of Indianapolis, County of Marion.

3.) That at all times mentioned herein, Plaintiff, Henry McNeal III, was a minor residing in the State of Indiana, City of Indianapolis, County of Marion.

4.) That at all times mentioned herein, Plaintiff, Harrison McNeal, was a minor residing in the State of Indiana, City of Indianapolis, County of Marion.

5.) The Lawrence Police Department is a political subdivision, or agent of a political subdivision and has been put on notice of plaintiffs claim pursuant to Ind. Code 34-13-3 and has neither admitted nor denied claim.

6.) The City of Lawrence is a political subdivision, or agent of a political subdivision and has been put on notice of plaintiffs claim pursuant to Ind. Code 34-13-3 and has neither admitted nor denied claim.

7.) The Metropolitan Police Department is a political subdivision, or agent of a political subdivision and has been put on notice of plaintiffs claim pursuant to Ind. Code 34-13-3 and has neither admitted nor denied claim.

8.) The City of Indianapolis is a political subdivision, or agent of a political subdivision and has been put on notice of plaintiffs claim pursuant to Ind. Code 34-13-3 and has neither admitted nor denied claim.

9.) The State of Indiana is a political subdivision, or agent of a political subdivision and has been put on notice of plaintiffs claim pursuant to Ind. Code 34-13-3 and has denied claim

10.)    That all times mentioned herein Defendant, Officer Andrew Thorup (Collectivley "Andrew Thorup"), was acting as a government employee within the scope of his employment with The City of Lawrence and The Lawrence Police Department.

11.)    That all times mentioned herein Defendant, Officer Khalid Brooks (Collectivley "Khalid Brooks"), was acting as a government employee within the scope of his employment with The City of Lawrence and The Lawrence Police Department.

12.)   That all times mentioned herein, Defendant, "City of Lawrence EMT", was an active government entity, of the county of Marion, State of Indiana and was acting as a government employee within the scope of his employment with The City of Lawrence.

13.)   That all times mentioned herein, Defendant, "Officers of Lawrence Police Department", was an active government entity, of the county of Marion, State of Indiana and was acting as a government employee within the scope of his employment with The City of Lawrence It should be noted that in good faith:

  A. Lucretia Clay, has attempted to gain access to body worn footage and was approved access to such footage in 2023, but has yet to bed presented with the opportunity to see such footage;

  B. Had Lucretia Clay been able to access footage sooner, Lucretia Clay would have had exact names to insert into this section of the claim; and

  C. Therefore, Lucretia Clay requests the ability to add additional names to this claim in the future, depending on when access is granted to public records or discovery begins—whichever, takes place sooner.

14.)   That all times mentioned herein, Defendant, "Indianapolis Metropolitan Police Department Inmate Transport Officer", was an active government entity, of the county of Marion, State of Indiana and was acting as a government employee within the scope of his employment with The City of Lawrence.

15.)   That all times mentioned herein, Defendant, Lawrence Police Department, was an active government entity, of the County of Marion, State of Indiana.

16.)   That all times mentioned herein, Defendant, The City of Lawrence, was an active government entity, of the County of Marion, State of Indiana.

17.)     That all times mentioned herein, Defendant, Indianapolis Metropolitan Police
Department, was an active government entity, of the County of Marion, State of Indiana.

18.)     That all times mentioned herein, Defendant, The City of Indianapolis, was an
active government entity, of the County of Marion, State of Indiana.

19.)     That all times mentioned herein, Defendant, The State of Indiana, was an active
government entity, of the State of Indiana, County of United States.

20.)     That at all times mentioned herein, Defendant, Axon Enterprise Inc's
headquarters was located in Scottsdale, Ariona, United States of America with another
office in New York, New York, United States

21.)     That at all times mentioned herein, Defendant, Axon Enterprise Inc., had an active
contract with The City of Lawrence and Lawrence Police Department, and was a
incorporated business that was licensed to conducted business and sales in the State of
Indiana, City Of Lawrence, County of Marion

22.)     That at all times mentioned herein, Defendant, Axon Enterprise Inc's is a
corporation incorporated under the laws of the state of Arizona having its principal place
of business in the state of Arizona and an additional office location in New York [states
other than the state of Indiana, where the incident occurred].

### PREFERRED VENUE

23.)     Preferred venue exists in Marion County, Indianapolis pursuant to Indiana Trial
Rule 75(A)(5)

### LEGAL CLAIMS

24.)     At all times relevant to this complaint, the acts and omissions alleged against the
Defendant Axon Enterprise Inc. and Governmental Defendants, City of Lawrence, City of

Indianapolis, State of Indiana, City of Lawrence Police Department, Indianapolis

Metropolitan Police Department, City of Lawrence EMT, and Indianapolis Metropolitan

Police Department Inmate Transport Officer were performed and/or omitted by and

through the agents, servants, employees and representatives of the Defendant, and each of

them while acting within the scope and course of their employment. Alternatively, if the

Defendant Axon Enterprise Inc. and Governmental Defendants, City of Lawrence, City of

Indianapolis, State of Indiana, City of Lawrence Police Department, Indianapolis

Metropolitan Police Department, City of Lawrence EMT, and Indianapolis Metropolitan

Police Department Inmate Transport Officer was acting *ultra vires*, then (he/ she/ they/ it)

is/ are personally liable in (his/ her/ their/ it's) individual capacity. .

25.)    That on or about August 30, 2022, Lucretia clay and her three children

Demethrice Clay, Henry McNeal III, Harrison McNeal were commuting in their family

vehicle when Lucretia Clay felt her car lag from a flat tire.

  A. Lucretia Clay pulled over to the side of the road near residential houses and attempted
     to use her air pump to air up her tire;

  B. Due to Lucretia Clay's initial stopping location. being in an area with homes that ran
     on a busy one-way street, Lucretia Clay accidentally passed the point of entry; and

  C. Clay slowly proceeded to search for a safe area to pull her car over to air up her tire;

  D. Prior to Lucretia Clay turning into the safe area, Andrew Thorup veered behind
     Lucretia Clay turning into the parking lot directly behind her.


26.)    On or about August 30, 2022, Lucretia Clay pulled her family vehicle over into 12

Stones parking lot located at 12130 Pendleton Pike Indianapolis, Indiana, 46236

A. Andrew Thorup—without asking Lucretia Clay for identification—told Lucretia clay that he had gotten a call regarding her having a flat tire;

B. When Lucretia Clay initially spoke to Andrew Thorup, Lucretia Clay noted that she was in the process of handling the flat tire; and

C. Andrew Thorup appeared to leave the scene, after hearing Lucretia Clay say she will handle the flat tire..

27.)    That on or about August 30, 2022, Lucretia Clay proceeded to get her air pump out of her trunk and attempted to air up the tire.

28.)    That on or about August 30, 2022, after airing up her tire, Lucretia Clay proceeded to get into her vehicle and continued to head westbound on Pendleton pike

A. As Lucretia Clay drove down Pendleton Pike, Lucretia Clay realized that her tire began to lose air again;

B. Lucretia Clay remembered that there was a Jiffy Lube, a tire service station, down the way;

C. Lucretia Clay turned on her hazard lights and proceeded in the far-right lane at a rate under the speed limit;

D. Lucretia Clay neared her destination and turned at the light on the intersection of Pendleton Pike and Sunnyside Road;

E. Lucretia Clay immediately turned again at the side street entrance of Sunnyside Road and 59th Street;

F. Lucretia Clay then realized that she is not able to access Jiffy Lube via that route;

     G. Lucretia Clay then turned into a parking space at the Indiana Immediate Care located at 10950 Pendleton Pike, Indianapolis, Indiana, 46236;

     H. Lucretia Clay notices a patrol car, that was later found to be driven by Khalid Brooks, speed past the entrance of Indiana Immediate Care—at a high rate of speed;

     I. Lucretia Clay reversed the car and proceeded to the southern exit of the parking lot, turning west bound onto Pendleton Pike; and

     J. Lucretia Clay drove for about six seconds and then turned into the Jiffy Lube parking lot, located at 5859 N. German Church Rd.

29.)     That On or about August 30, 2022, Lucretia Clay turned into the Jiffy Lube parking lot, and drove the family vehicle up to the tire changing station

     A. Lucretia Clay turned her car off, got out of the car, and walked to the front of her car, approached the Jiffy Lube employee and asked for help; and

     B. Demethrice Clay, Henry McNeal III, and Harrison McNeal remained in the car and watched their mother.

30.)     That On or about August 30, 2022, Andrew Thorup drove into the Jiffy Lube parking lot, located at 5859 N. German Church Rd. with his sirens on, parked his patrol vehicle, and aggressively got out of the vehicle—yelling at Lucretia Clay " You said you would park the car"

     A. Lucretia Clay then informed Andrew Thorup that there were no mentions that she would park the car;

    B.  After hearing Lucretia Clay's response, Andrew Thorup, while still yelling, aggressively walked towards Lucretia Clay and Lucretia Clay's family vehicle—where Demethrice Clay, Henry McNeal III, and Harrison McNeal resided in the car;

    C.  Andrew Thorup continued to walk towards Lucretia Clay, yelling that he would be towing her family vehicle;

    D.  Lucretia Clay tells Andrew Thorup that it would be illegal to tow her car; and

    E.  Lucretia Clay attempts to walk back to her vehicle and get into the car to ensure the safety of her and her children from Andrew Thorup.

31.)      That, as a direct proximate result of Thorup's, threatening body language, aggression, and abuse of status, Lucretia Clay became afraid for the safety of her sons Demethrice Clay, Henry McNeal III, Harrison McNeal, and herself.

32.)      That as a direct proximate result of Andrew Thorup's negligence, Andrew Thorup did not ask Lucretia Clay for identification—prior to interacting with Lucretia Clay.

33.)      That as a direct and proximate result of Andrew Thorup's threatening body language, aggression, and abuse of status, Lucretia Clay felt the need to seek safety within her vehicle to protect Demethrice Clay, Henry McNeal III, Harrison McNeal, and herself.

34.)      That on or about August 30, 2022, Khalid Brooks drove into the Jiffy Lube parking lot, located at 5859 N. German Church Rd with his sirens on following Andrew Thorup.

    A.  Khalid Brook parked his patrol vehicle and exited his vehicle.

35.)    That on or about August 30, 2022, Lucretia Clay, attempted to seek safety for her

sons Demethrice Clay, Henry McNeal III,  Harrison McNeal, and herself within their

family vehicle.

    A.   Andrew Thorup yelled to tell Lucretia Clay that she would be going to jail;

    B.   Lucretia Clay has no recollection of Andrew Thorup verbally telling her that she is

       under arrest;

    C.  Andrew Thorup did not read Lucretia Clay her memorandum rights;

    D.  In fear of Andrew Thorup, Lucretia Clay grabbed onto the bottom of her shirt; and

    E.   Andrew Thorup then jumped Lucretia Clay, assisted by Khalid Brooks, from behind

       and began to yell "Give me your hands".

36.)    That on or about August 30, 2022, Andrew Thorup physically assaulted Lucretia

Clay by jumping her and forcing his body weight onto Lucretia Clay from behind and

forcing her into fetal position—directly resulting in preventing her from moving and

confining her hands into a position that would not allow her to comply with his demand

to "Give Me Your Hands"

    A.  Andrew Thorup yelled that clay was resisting arrest;

    B.  Clay screamed that she was not resisting several times; and

    C.  Khalid Brooks eventually lifted from Lucretia Clay's back just enough for Lucretia

       Clay to get her hands free and place her right hand behind her back.

37.)       That on or about August 30, 2022, Andre Thorup physically assaulted Lucretia

Clay by tasing  Lucretia Clay from behind without warning.

    A.  Andrew Thorup tased Lucretia Clay in her spine and in her side.

38.)    That on or about August 30, 2022, Khalid Brooks saw Andrew Thorup aggressively attacking Lucretia Clay and ran over to Lucretia Clay to assist Andrew Thorup with physically assaulting Lucretia Clay by jumping her and forcing his body weight onto Lucretia Clay, from behind, and forcing her into fetal position—directly resulting in preventing her from moving and confining her hands into a position that would not allow her to comply with his demand to "Give Me Your Hands"

A. At the time Lucretia Clay weighed 107 lbs.;

B. At the time Lucretia Clay's height was 5 ft. 3 in.;

C. Lucretia Clay was forced into a fetal position with her chest to her knees and her hands jammed between her inner thighs, her forearms were wedged between her upper thigh, hip, and rib cage—while both officers forced their way onto Lucretia Clay's back, making it impossible for her to remove her hands while yelling for clay to give them her hands;

D. Khalid Brooks eventually lifted just enough for Lucretia Clay to get her hands free and place her right hand behind her back;

E. Demethrice Clay, Henry McNeal III, and Harrison McNeal yelled, screamed, and cried in the car while watching Lucretia Clay be assaulted; and

F. Andrew Thorup and Khalid Brooks handcuffed Lucretia Clay and stood her up on her feet.

39.)    That as a direct and proximate result of Andrew Thorup Tasing Lucretia Clay, Lucretia Clay was unable to bend her legs.

40.)      That On or about August 30, 2022, other officers pulled up to the Jiffy Lube located at 7969 Pendleton Pike Indianapolis, Indiana and assist Andrew Thorup and Khalid Brooks with apprehending Lucretia Clay.

   A.  Lucretia Clay communicated to officers that she was unable to bend her legs to walk;

   B.  Officers dragged Lucretia Clay to the opposite side of the Jiffy Lube parking lot—scraping her bare toes and foot on the cement;

   C.  Multiple officers stood and watched Lucretia Clay be dragged along the pavement to the other side of the Jiffy Lube parking lot;

   D.  Officers attempted to force Lucretia Clay onto her knees--on the ground--after placing shackles on her ankles;

   E.  Lucretia Clay continued to plead with officers that she cannot bend her legs;

   F.  Officers forced Lucretia Clay to bend her knees by pushing down on her shoulders and head , and eventually shoved Lucretia Clay to the ground;

   G.  Officers shoved Lucretia Clay so hard to the ground that her tail bone hit the ground; and

   H.  Lucretia Clay screamed and bounced back up to her feet.

41.)      That On or about August 30, 2022, Lucretia Clay yelled out her mother's number into a crowd of bystanders and asked that someone call her mother.

   A.  A bystander goes to look after Lucretia Clay's children until her mother arrives;

   B.  A bystander calls Lucretia Clay's mother to come and get her children;

   C.  After a few minutes Lucretia Clay's mother and stepfather arrive at the scene;

   D.  Kathleen Clay (maiden name) attempts to retrieve Demethrice Clay, Henry McNeal III, Harrison McNeal;

    E.  Andrew Thorup refused to release Demethrice Clay, Henry McNeal III, and Harrison McNeal into their grandmother's care; and

    F.  Demethrice Clay, Henry McNeal III and Harrison McNeal were eventually released to Kathleen Clay.

42.)  That on or about August 30, 2022, Andrew Thorup asked Lucretia Clay for her name.

    A.  Lucretia Clay refused to answer Andrew Thorup;

    B.  Andrew Thorup walked over to Lucretia Clay's family vehicle;

    C.  Lucretia Clay yelled that she does not consent for Andrew Thorup to search or enter her car;

    D.  Andrew Thorup proceeded to search Lucretia Clay's Car; and

    E.  Thorup went into Lucretia Clay's purse to retrieve her ID

43.)  That on or about August 30, 2022, officers lay Lucretia Clay into Khalid Brooks Patrol Vehicle

    A.  Khalid Brooks slammed the right rear door onto Lucretia Clay's legs;

    B.  Khalid Brooks purposely slammed the left rear door onto Lucretia Clay's head to shut Clay into the Patrol Vehicle;

    C.  Khalid Brooks was forced to leave the doors open; and

    D.  Khalid Brooks proceeded to get into the patrol vehicle  and verbally threaten the wellbeing of Lucretia Clay's children in the presence of Lucretia Clay to antagonize Lucretia Clay

44.)  On or about August 30, 2022, Lucretia Clay's stepfather Robert Edwards approached Khalid Brook's patrol car to speak with Lucretia Clay

     A.  Robert Edwards proceeded to hold Lucretia Clay's legs up to help Lucretia Clay with pain while she lay in Khalid Brooks Patrol vehicle;

45.)     On or about August 30, 2022, an ambulance (EMT) arrived at Jiffy Lube, located at 7969 Pendleton Pike, Indianapolis, Indiana 46236.

     A.  Initially, Lucretia Clay refused medical treatment;

     B.  Lucretia Clay eventually requested medical attention; and

     C.  The EMT staff looked at Lucretia Clay's back and stated that Lucretia Clay was fine because they did not (see anything on Lucretia Clay's back).

46.)     On or about August 30, 2022, officers questioned Lucretia Clay's step father, Robert Edwards, rather or not Lucretia Clay was mentally ill because of the way that Lucretia Clay responded to the officers abuse

     A.  Lucretia Clay did not show any signs of mental illness prior to the altercation on August 30, 2022.

47.)     On or about August 30, 2022, an Indianapolis Metropolitan Police Department (IMPD) inmate transport vehicle arrived at the Jiffy Lube parking lot, located at 7969 Pendleton Pike, Indianapolis, IN, 46236

     A.  The IMPD officer who is responsible for driving the inmate transport vehicle, was notified by Lucretia Clay that she could not bend her legs;

     B.  The IMPD Officer proceeded to lift Lucretia Clay into the inmate transport vehicle, at which time the officer allowed Clay to fall onto the floor of the vehicle;

     C.  The IMPD officer proceeded to call Lucretia Clay dramatic and close the vehicle door; and

    D.  Clay rode to the Marion County processing center, located at 675 Justice Way, Indianapolis, Indiana, 46203 face down on the floor in tears.

48.)    On or about August 30, 2022, Lucretia Clay was detained for resisting arrest with injury, neglect of dependents, attempting to disarm an officer, and disorderly conduct

    A.  Lucretia Clay stood the entire time she was at 675 Justice Way, Indianapolis, Indiana, 46203, due to inability to bend her legs;

    B.  Lucretia Clay was barefoot for majority of the time she was detained at 675 Justice Way, Indianapolis, Indiana, 46203;

    C.  Lucretia Clay met with a representative of the jail to submit her remarks about the incident that had occurred;

    D.  Lucretia Clay was released on a $500 bond; and

    E.  As part of the terms for Lucretia Clay's release, she was forced to give the state of Indiana a DNA swab

49.)    On or about August 30, 2022, Andrew Thorup falsified the police report pertaining to Lucretia Clay's arrest by stating that Lucretia Clay attempted to retrieve Khalid Brooks Gun or physically assaulted Khalid Brooks, and etc.

50.)    On or about August 30, 2022, Andrew Thorup neglected to submit a use of force report pertaining to Lucretia Clay being tased

51.)    On or about August 30, 2022, Lucretia Clay, Demethrice Clay, Henry McNeal III, and Harrison McNeal family vehicle was towed at the request of the Lawrence Police Department

    A. Lucretia Clay had two licensed drivers at the scene who were able to become the responsible party for Lucretia Clay's family vehicle to prevent the vehicle from being towed by the city and tow fees

    B. Andrew Thorup stole Lucretia Clay's Identification

    C. Without Identification, Lucretia Clay had a very hard time presenting the documentation needed for her to get her family vehicle out of tow

52.)    On or about December 6, 2022, all charges against Clay were dismissed

## I.   <u>NEGLEGENCE</u>

1. The State of Indiana neglected their duty to Clay when it :

    A. Allowed the licensing of Indianapolis Metropolitan Police Department, Lawrence Police Department, The City of Lawrence, and The City of Indianapolis to use its State Licensing agency and system (BMV) to permit travel and transport of Lucretia Clay's person unlawfully by vehicle using the highway system , a state license, and a state license plate on the transport vehicle completely based on hearsay.

2. The City of Lawrence and Marion County neglected their duty to Clay when it :

    A. Failed to adequately train Andrew Thorup to comply with a reasonable policy against assault, battery, false arrest, false imprisonment, witness intimidation, and obstruction of justice despite its knowledge of past incidents of tortious and criminal acts by officers against citizens;

    B. Failed to adequately train Khalid Brooks to comply with a reasonable policy against assault, battery, false arrest, false imprisonment, witness intimidation, and

obstruction of justice despite its knowledge of past incidents of tortious and criminal acts by officers against citizens;

C.  Failed to adequately train all Lawrence Police Officer who reported to the scene to comply with a reasonable policy against assault, battery, false arrest, false imprisonment, witness intimidation, and obstruction of justice despite its knowledge of past incidents of tortious and criminal acts by officers against citizens; and

D.  Engaged in falsifying evidence and information to delay and mislead a lawful investigation by not allowing Lucretia Clay access to public records (that she had been previously approved access to).

3.  The City of Indianapolis and Marion County neglected their duty to Clay when it :

E.  Failed to adequately train Transport Officers to comply with a reasonable policy against assault, battery, transport of a prisoner, and obstruction of justice despite its knowledge of past incidents of tortious and criminal acts by officers against citizens;

F.  Failed to adequately train jail employees on the storing of prisoner's documented statements obtained at the time of processing;

G.  Unlawful imprisoned Lucretia Clay based on hearsay without conducting its own investigation of events prior to accepting responsibility of Lucretia Clay's Person as a prisoner in the  Indianapolis Police Department's transport vehicle and processing center at 675 Justice Way, Indianapolis, IN, 46203; and

H.  Unlawfully took Lucretia Clay's DNA (against her will) as a condition for her to be released on bond—in violation of Lucretia Clay's religious beliefs and freedom of religious expression, in violation of Clay's First Amendment Right.

4. The Inmate Transport Officer employed by the Indianapolis Metropolitan Police Department, City of Indianapolis and Marion County neglected his duty to Lucretia Clay when he:

   A. Placed Lucretia Clay's person into the transport vehicle and allowed Lucretia Clay to fall onto the floor and required her to stay in that position for the entire ride, due to inadequate help to secure her person on the bench and lack of safety belts—after Lucretia Clay had communicated that she could not bend her legs and with the knowledge that Lucretia Clay's hands were cuffed behind her back and her feet were shackled together, preventing her from moving; and

   B. Used verbally condescending and abusive language towards Lucretia Clay after allowing her person to fall onto the floor of the inmate transport vehicle stating " Well that was dramatic" after her ~~Clay's~~ person ~~has~~had fallen to the ground due to inadequate help to secure her person on the bench and lack of safety belts —after Clay had communicated that she could not bend her legs and with the knowledge that Clay's hands were cuffed behind her back and her feet were shackled together preventing her from moving

5. The EMT associated with Lawrence and or Marion County (that arrived on the scene on the day in question) neglected their duty to Lucretia when they:

   A. Failed to thoroughly check and treat Lucretia Clay following her consent to be checked out.

6. Andrew Thorup neglected his duty to Lucretia Clay when he:

   A. Failed to request Lucretia Clay's identification during introduction;

B.  Threatened Lucretia Clay by using offensive body language and position as a public servant;

C.  Physically assaulted Lucretia Clay by jumping her and forcing his body weight onto Lucretia Clay from behind and forcing her into fetal position directly resulting in preventing her from moving and confining her hands into a position that would not allow her to comply with his demand to "Give Me Your Hands";

D.  Failing to read Lucretia Clay her memorandum rights at the time of arrest;

E.  Tased Lucretia Clay from behind without warning;

F.  Allowed Lucretia Clay to be dragged to the other side of the parking lot while disregarding her verbally communicating her inability to walk;

G.  Allowed Clay to be forced to the ground on her knees, after Lucretia Clay communicated that she could not bend her legs;

H.  Falsified his police report pertaining to the events that took place, by stating that Lucretia Clay attempted to retrieve Khalid Brooks Gun, or physically assaulted Khalid Brooks, etc.;

I.  Failed to complete a use of force report (separate from the police report) specifically relating to the use of a taser or deadly weapon on a civilian;

J.  Failed to intervein when Lucretia Clay was physically assaulted by Khalid Brooks when he forced his body weight onto Lucretia Clay from behind and forced her into fetal position directly resulting in preventing her from moving and confining her hands into a position that would not allow her to comply with his demand to "Give Me Your Hands";

K.  Failed to intervein when Lucretia Clay was dragged to the other side of the parking lot by fellow officers, while disregarding her verbally communicating her inability to walk;

L.  Failed to intervein when Lucretia Clay was forced to the ground on her knees by fellow officers, after Lucretia Clay communicated that she could not bend her legs;

M.  Failed to intervein when Khalid Brooks forced the patrol vehicle door closed onto Lucretia Clay's body and head while Lucretia Clay, lay in the police car due to injuries to her spine and back from being tased;

N.  Failed to intervein when Khalid Brooks was mentally antagonizing Lucretia Clay regarding the welfare of her children while it was noticeable that Lucretia Clay was in a sensitive mental state and traumatized by the happening events;

O.  Failed to intervein when Lucretia Clay was going to be transported by the IMPD officer employed by Indianapolis Metropolitan Police Department who placed Lucretia Clay's person into the inmate transport vehicle and allowed clay to fall onto the floor due to inadequate help to secure her person on the bench and lack of safety belts —after Lucretia Clay had communicated that she could not bend her legs and with the knowledge that Clay's hands were cuffed behind her back and her feet were shackled together preventing her from moving;

P.  Battered Lucretia Clay in the presence of Demethrice Clay, Henry McNeal III, and Harrison McNeal;

Q.  Seized Demethrice Clay, Henry McNeal III, and Harrison McNeal when they were to be released to Kathleen Clay (Maiden Name);

7. Khalid Brooks neglected his duty to Lucretia Clay when he:

    A. Failed to request Lucretia Clay's identification during introduction;

    B. Threatened Lucretia Clay by using offensive body language and position as a public servant;

    C. Physically assaulted Lucretia Clay by jumping her and forcing his body weight onto Lucretia Clay from behind and forcing her into fetal position directly resulting in preventing her from moving and confining her hands into a position that would not allow her to comply with his demand to "Give Me Your Hands";

    D. Failing to read Lucretia Clay her memorandum rights at the time of arrest;

    E. Allowed Lucretia Clay to be dragged to the other side of the parking lot while disregarding her verbally communicating her inability to walk;

    F. Allowed Lucretia Clay to be forced to the ground on her knees after Lucretia Clay communicated that she could not bend her legs;

    G. Forced the patrol vehicle door closed on Lucretia Clay's body and head while Lucretia Clay lay in the police car due to injuries to her spine and back from being tased;

    H. Mentally antagonized Lucretia Clay regarding the welfare of her children while it was noticeable that Lucretia Clay was in a sensitive mental state and traumatized by the happening events;

    I. Allowed officer Andrew Thorup to falsify his police report, pertaining to the events that took place without coming forward and correcting the false allegations;

J.  Failed to intervein when Lucretia Clay was physically assaulted by Andrew Thorup, when jumping her and forcing his body weight onto Lucretia Clay from behind and forcing her into fetal position directly resulting in preventing her from moving and confining her hands into a position that would not allow her to comply with his demand to "Give Me Your Hands";

K.  Failed to intervein when Andrew Thorup tased Lucretia Clay in her spine and side without warning;

L.  Failed to intervein when Lucretia Clay was dragged to the other side of the parking lot, by fellow officers, while disregarding her verbally communicating her inability to walk;

M.  Failed to intervein when Lucretia Clay was forced to the ground on her knees, by fellow officers after Lucretia Clay communicated that she could not bend her legs;

N.  Failed to intervein when Lucretia Clay was going to be transported by the IMPD officer employed by Indianapolis Metropolitan Police Department who placed Lucretia Clay's person into the inmate transport vehicle and allowed clay to fall onto the floor due to inadequate help to secure her person on the bench and lack of safety belts —after Lucretia Clay had communicated that she could not bend her legs and with the knowledge that Clay's hands were cuffed behind her back and her feet were shackled together preventing her from moving;

O.  Battered Lucretia Clay in the presence of Demethrice Clay, Henry McNeal III, and Harrison McNeal; and

    P.   Failed to intervene when Andrew Thorup seized Demethrice Clay, Henry McNea III, and Harrison McNeal when they were to be released to Kathleen Clay (Maiden Name).

8.  All Lawrence Police Officers at the scene of the neglected their duty to Lucretia Clay when they:

    A.  Failed to read Lucretia Clay her memorandum rights at the time of arrest;

    B.  Allowed Lucretia Clay to be dragged to the other side of the parking lot while disregarding her verbally communicating her inability to walk;

    C.  Allowed Clay to be forced to the ground on her knees, after Lucretia Clay communicated that she could not bend her legs and/or forced Lucretia Clay to the ground on her knees after Lucretia Clay communicated that she could not bend her legs;

    D.  Allowed Khalid Brooks to force the patrol vehicle door closed on Lucretia Clay's body and head while Lucretia Clay lay in the police car, due to injuries to her spine and back from being tased;

    E.  Allowed Khalid Brooks to mentally antagonized Lucretia Clay regarding the welfare of her children, while it was noticeable that Lucretia Clay was in a sensitive mental state and traumatized by the happening events;

    F.  Allowed Andrew Thorup to falsify his police report, pertaining to the events that took place, without coming forward and correcting the false allegations;

    G.  Failed to intervene when fellow officers dragged Lucretia Clay to the other side of the parking lot, while disregarding her verbally communicating her inability to walk;

H. Failed to intervene when fellow officers forced Lucretia Clay to the ground on her knees, after Lucretia Clay communicated that she could not bend her legs, by pushing down on Lucretia Clay's shoulders and head—causing Lucretia Clay's tailbone to hit the pavement;

I. Failed to intervein when Khalid Brooks force the patrol vehicle door closed onto Lucretia Clay's body and head, while Lucretia Clay lay in the police car due to injuries to her spine and back from being tased;

J. Failed to intervein when Khalid Brooks was mentally antagonizing Lucretia Clay regarding the welfare of her children, while it was noticeable that Lucretia Clay was in a sensitive mental state and traumatized by the happening events;

K. Failed to intervein when Lucretia Clay was going to be transported by the IMPD officer employed by Indianapolis Metropolitan Police Department, who placed Lucretia Clay's person into the inmate transport vehicle and allowed Lucretia Clay to fall onto the floor the due to inadequate help to secure her person on the bench and lack of safety belts —after Lucretia Clay had communicated that she could not bend her legs and with the knowledge that Lucretia Clay's hands were cuffed behind her back and her feet were shackled together preventing her from moving;

L. Battered Lucretia Clay in the presence of Demethrice Clay, Henry McNeal III, and Harrison McNeal;

M. Failed to intervene when officers battered Lucretia Clay in the presence of Demethrice Clay, Henry McNeal, and Harrison McNeal; and

N.  Failed to intervene when Andrew Thorup seized Demethrice Clay, Henry McNeal III, and Harrison McNeal when they were to be released to Kathleen Clay (Maiden Name).

7.  Axon neglected its duty to Lucretia Clay when it :

A.  Failed to install verbal warning messages prior to the deploying of a taser despite its knowledge that a taser can be considered and or used as a weapon;

B.  Failed to install verbal warning messages prior to the deploying of a taser despite its knowledge of past incidents of tortious and criminal acts by officers against citizens; and

C.  Failed to install verbal warning messages prior to the deploying of a taser despite its knowledge that officers are instructed to warn civilians prior deploying a taser.

## II.    **FALSE IMPRISONEMENT**

1.  The City of Indianapolis and Marion County falsely imprisoned, falsely arrested, and criminally confined Lucretia Clay when it :

A.  Allowed the transport of Lucretia Clay's person in it's inmate transport vehicle;

B.  Unlawfully imprisoned Lucretia Clay based on hearsay, without conducting their own investigation of events—prior to accepting responsibility of Lucretia Clay's person, as a prisoner in the  Indianapolis Metropolitan Police Department's transport vehicle and processing center at 675 Justice Way Indianapolis Indiana, 46203;

C.  Unlawfully took and stored Lucretia Clay's DNA (against her will), as a condition for her to be released on bond—in violation of Lucretia Clay's religious beliefs and

freedom of religious expression, in violation of Lucretia Clay's First Amendment Right.;

    D. Detained Lucretia Clay and held her hostage, based on hearsay, for over 12 hours and demanded a $500.00 ransom for the release of her person.

2. The transport officer employed by the City of Indianapolis and Marion County falsely imprisoned, falsely arrested, and criminally confined Lucretia Clay when he :

    A. Placed Lucretia Clay's person into the transport vehicle and transported her person— based on hearsay, without conducting his own investigation into the events, prior to accepting responsibility of Lucretia Clay's Person as a prisoner (against her will) into the Indianapolis Police Department's transport vehicle and unlawfully handed Lucretia Clay's person over to 675 Justice Way, Indianapolis, Indiana, 46203.

3. Officer Andrew Thorup falsely imprisoned, falsely arrested, and criminally confined Lucretia Clay when he :

    A. Physically assaulted Lucretia Clay jumped her and forced his body weight onto Lucretia Clay from behind, and forced her into fetal position—directly resulting in preventing her from moving and confining her hands into a position that would not allow her to comply with his demand to "Give Me Your Hands";

    B. Failed to read Lucretia Clay her memorandum rights at the time of arrest;

    C. Failed to properly place Lucretia Clay under arrest;

    D. Placed handcuffs on Lucretia Clay's wrists and allowed shackles to be placed on her feet; and

    E. Handed Lucretia Clay's confined person over to the Indianapolis Metropolitan Police Department against Lucretia Clay's will.

4. Officer Andrew Thorup falsely imprisoned, falsely arrested, and criminally confined Demethrice Clay, Henry McNeal III, and Harrison McNeal when he :

    A. Prevented and delayed Demethrice Clay, Henry McNeal III, and Harrison McNeal from going with their grandmother, Kathleen Clay.

5. Khalid falsely imprisoned, falsely arrested, and criminally confined Lucretia Clay when he:

    A. Physically assaulted Lucretia Clay, jumped her, and forced his body weight onto Lucretia Clay from behind, forced her into fetal position—directly resulting in preventing her from moving and confining her hands into a position that would not allow her to comply with his demand to "Give Me Your Hands";

    B. Failing to read Lucretia Clay her memorandum rights at the time of arrest;

    C. Failing to properly arrest Lucretia Clay;

    D. Placed handcuffs on Lucretia Clay's wrists and allowed shackles to be placed on her feet;

    E. Allowed Lucretia Clay to be forced to the ground on her knees, after Lucretia Clay communicated that she could not bend her legs;

    F. Detained Lucretia Clay's person in the back of his transport vehicle with her hands were cuffed behind her back and her feet shackled;

    G. Handed Lucretia Clay's person over to the Indianapolis Metropolitan Police Department against Lucretia Clay's will;

    H. Physically assaulted Lucretia Clay, by jumping her, forcing his body weight onto Lucretia Clay from behind, and forcing her into fetal position—directly resulting in

preventing her from moving and confining her hands into a position that would not allow her to comply with his demand to "Give Me Your Hands";

I.  Failing to read Lucretia Clay her memorandum rights at the time of arrest;

J.  Allowed Lucretia Clay to be dragged to the other side of the parking lot, while disregarding her verbally communicating her inability to walk;

K.  Allowed Lucretia Clay to be forced to the ground on her knees, after Lucretia Clay communicated that she could not bend her legs;

L.  Confined Lucretia Clay's person to his police car, as he forced the patrol vehicle door closed on Lucretia Clay's body and head;

M.  Confining Lucretia Clay's person to his police car, and mentally antagonized Lucretia Clay regarding the welfare of her children while it was noticeable that Lucretia Clay was in a sensitive mental state and traumatized by the happening events;

N.  Handed Lucretia Clay's confined person over to the Indianapolis Metropolitan Police Department against Lucretia Clay's will.

6.  Khalid Brooks falsely imprisoned, falsely arrested, and criminally confined Demethrice Clay, Henry McNeal III, and Harrison McNeal when he :

A.  Prevented and delayed Demethrice Clay, Henry McNeal III, and Harrison McNeal from going with their grandmother, Kathleen Clay.

7.  All Lawrence police officers at the scene falsely imprisoned, falsely arrested, and criminally confined Lucretia Clay when they:

A.  Failed to request Lucretia Clay's identification during introduction;

B.  Failing to read Lucretia Clay her memorandum rights at the time of arrest;

C.  Failed to properly arrest Lucretia Clay;

D. Placed handcuffs on Lucretia Clay's wrists and allowed shackles to be placed on her feet;

E. Forced Lucretia Clay to the ground on her knees, after Lucretia Clay communicated that she could not bend her legs;

F. Handed Lucretia Clay's confined person over to the Indianapolis Metropolitan Police Department, against Lucretia Clay's will;

8. All Lawrence police officers at the scene falsely imprisoned, falsely arrested, and criminally confined Demethrice Clay, Henry McNeal III, and Harrison McNeal when he :

A. Prevented and delayed Demethrice Clay, Henry McNeal III, and Harrison McNeal from going with their grandmother, Kathleen Clay.

III.    **INTENTIONAL INFLICTION OF EMOTIONAL DITRESS**

1. The Indianapolis Metropolitan Police Department officer employed by the City of Indianapolis and Marion County intentionally inflicted emotional distress on Lucretia Clay's person when he :

A. Placed Lucretia Clay's person into the transport vehicle, allowed Lucretia Clay to fall onto the floor, and required her to stay in that position for the entire ride –due to inadequate help to secure her person on the bench and lack of safety belts, after Lucretia Clay had communicated that she could not bend her legs and with the knowledge that Lucretia Clay's hands were cuffed behind her back and her feet were shackled together preventing her from moving; and

B. Used verbally condescending and abusive language towards Lucretia Clay after allowing her person to fall onto the floor of the inmate transport vehicle stating " Well that was dramatic" after her Lucretia Clay's person has fallen to the ground due to inadequate help to secure her person on the bench and lack of safety belts —after Lucretia Clay had communicated that she could not bend her legs.

2. The Indianapolis Metropolitan Police Department officer employed by the  City of Indianapolis and Marion County intentionally inflicted emotional distress on Lucretia Clay's person when he :

   A. Allowed Demethrice Clay, Henry McNeal III, and Harrison McNeal to see Lucretia Clay fall onto the floor of the Inmate Transport Vehicle and shut the door.

3. Andrew Thorup intentionally inflicted emotional distress on Lucretia Clay's person his duty when he:

   A. Threatened Lucretia Clay by using offensive body language and position as a public servant;

   B. Physically assaulted Lucretia Clay by jumping her and forcing his body weight onto Lucretia Clay from behind and forcing her into fetal position directly resulting in preventing her from moving and confining her hands into a position that would not allow her to comply with his demand to "Give Me Your Hands";

   C. Tased Lucretia Clay from behind without warning;

   D. Allowed Lucretia Clay to be dragged to the other side of the parking lot, while disregarding her verbally communicating her inability to walk;

   E. Withheld Lucretia Clay's children from being released into the care of Lucretia Clay's Kathleen Clay (maiden name);

F. Allowed Lucretia Clay to be forced to the ground on her knees, after Lucretia Clay communicated that she could not bend her legs, causing Lucretia Clay to hit her tailbone one the pavement; and

G. Falsified his police report, pertaining to the events that took place, causing Lucretia Clay to have to endure court proceedings relating to child endangerment and other charges that lingered over Lucretia Clay's life.

4. Andrew Thorup intentionally inflicted emotional distress on Demethrice Clay Henry McNeal III, and Harrison McNeal's person when he:

A. Battered Lucretia Clay in the presence of Demethrice Clay, Henry McNeal III, and Harrison McNeal; and

B. Prevented Demethrice Clay, Henry McNeal III, and Harrison McNeal from going with Kathleen Clay.

5. Khalid Brooks intentionally inflicted emotional distress on Lucretia Clay's person when he:

A. Threatened Lucretia Clay by using offensive body language and position as a public servant;

B. Physically assaulted Lucretia Clay by jumping her, forcing his body weight onto Lucretia Clay from behind and forcing her into fetal position—directly resulting in preventing her from moving and confining her hands into a position that would not allow her to comply with his demand to "Give Me Your Hands";

C. Allowed Lucretia Clay to be dragged to the other side of the parking lot, while disregarding her verbally communicating her inability to walk;

    D. Allowed Lucretia Clay to be forced to the ground on her knees, after Lucretia Clay communicated that she could not bend her legs;

    E. Forced the patrol vehicle door closed on Lucretia Clay's body and head, while Lucretia clay lay in the police car due to injuries to her spine and back from being tased;

    F. Mentally antagonized Lucretia Clay regarding the welfare of her children, while it was noticeable that Lucretia Clay was in a sensitive mental state and traumatized by the happening events; and

    G. Allowed officer Andrew Thorup to falsify his police report pertaining to the events that took place without coming forward and correcting the false allegations.

6. Khalid Brooks intentionally inflicted emotional distress on Demethrice Clay, Henry McNeal III, and Harrison McNeal's person when he:

    A. Battered Lucretia Clay in the presence of Demethrice Clay, Henry McNeal III, and Harrison McNeal;

    B. Tased Lucretia Clay in the presence of Demethrice Clay, Henry McNeal, and Harrison McNeal; and

    C. Prevented Demethrice Clay, Henry McNeal III, and Harrison McNeal from going with Kathleen Clay.

7. All officers at the scene intentionally inflicted emotional distress on Lucretia Clay's person when they:

    A. Allowed Lucretia Clay to be dragged and/ or dragged Lucretia Clay to the other side of the Jiffy Lube parking, lot while disregarding her verbally communicating her inability to walk;

B.  Allowed  Lucretia Clay's children to be withheld and/ or withheld Lucretia Clay's children from being released into the care of  Kathleen Clay (maiden name);

C.  Allowed Lucretia Clay to be forced and/ or forced Lucretia Clay to the ground on her knees, after Lucretia Clay communicated that she could not bend her legs causing Lucretia Clay to hit her tailbone on the pavement.

8.  All officers present at the scene intentionally inflicted emotional distress on Demethrice Clay, Henry McNeal III, Harrison McNeal's person when they:

A. Battered Lucretia Clay in the presence of Demethrice Clay, Henry McNeal III, and Harrison McNeal;

B.  Tased Lucretia Clay in the presence of Demethrice Clay, Henry McNeal, and Harrison McNeal; and

C.  Prevented Demethrice Clay, Henry McNeal III, and Harrison McNeal from going with Kathleen Clay.

## IV.    ILLEGAL AND UNREASONABLE SEARCH AND SEIZURE

1.  Lawrence Police Department illegally and unreasonably search and seized Lucretia Clay's property when:

A.  Lawrence Police Department ordered for Lucretia Clay's car to be towed without just cause;

B.  Lawrence police Department Towed Lucretia Clay's car, although there were multiple people with a license available to take responsibility for Lucretia Clay's car—to avoid tow fees and other hassles to Lucretia Clay's financial situation; and

C.  Lawrence Police Department seized Lucretia Clay's person without probable cause.

2. Indianapolis Metropolitan Police Department illegally and unreasonably search and seized Lucretia Clay's property when:

   A. Indianapolis Metropolitan Department ordered for Lucretia Clay's car to be towed without just cause;

   B. Indianapolis Metropolitan Police Department Towed Lucretia Clay's car, although there were multiple people with a license available, to take responsibility for Clay's car to avoid tow fees and other hassles to Lucretia Clay's financial situation;

   C. Indianapolis Metropolitan Police Department seized Lucretia Clay's person without probable cause; and

   D. Indianapolis Metropolitan Police Department collected Lucretia Clays's DNA.

3. The officer employed by Indianapolis Metropolitan Police Department that drove the inmate transport vehicle illegally and unreasonably search and seized Lucretia Clay's property when:

   A. The officer employed by the Indianapolis Metropolitan Police Department that drove the inmate transport vehicle seized Lucretia Clay's person without probable cause;

4. Andrew Thorup illegally and unreasonably searches and seized Lucretia Clay's property when he :

   A. Ordered for Lucretia Clay's car to be towed without just cause;

   B. Towed Lucretia Clay's car, although there were multiple people with a license available to take responsibility for Clay's car to avoid tow fees and other hassles to Lucretia Clay's financial situation

   C. Seized Lucretia Clay's person without probable cause;

    D. Indianapolis Metropolitan Police Department collected Lucretia Clays's DNA due to his report;

    E. Seized Lucretia Clays Children, while a legal guardian was at the scene and available to act as custody holder of the children on clay's behalf; and

    F. Searched Lucretia Clay's car for identification, although clay repeatedly told officers that they did not have permission to search clay's car

5. Andrew Thorup illegally and unreasonably searches and seized Demethrice Clay, Henry McNeal III, and Harrison McNeal's property when he :

    A. Prevented Demethrice Clay, Henry McNeal III, and Harrison McNeal from being released to Kathleen Clay.

6. Khalid Brooks illegally and unreasonably searches and seized Lucretia Clay's property when he :

    A. Ordered for Lucretia Clay's car to be towed without just cause;

    B. Towed Lucretia Clay's car although there were multiple people with a license available to take responsibility for Clay's car to avoid tow fees and other hassles to Lucretia Clay's financial situation;

    C. Cuffed and transported Lucretia Clay's person without probable cause;

    D. Indianapolis Metropolitan Police Department collected Lucretia Clays's DNA;

    E. Seized Lucretia Clay's Children, while a legal guardian was at the scene and available to act as custody holder of the children on Lucretia Clay's behalf; and

    F. Searched Lucretia Clay's car for identification, although clay repeatedly told officers that they did not have permission to search clay's car.

7. Khalid Brooks illegally and unreasonably searches and seized Lucretia Clay's person when he :

   A. Cuffed, detained, and transported Lucretia Clay's person without probable cause

8. All Lawrence Police Department officers at the scene illegally and unreasonably searches and seized Lucretia Clay's person when they:

   A. Cuffed, detained and transported Lucretia Clay's person without probable cause

## V.    ASSALT AND BATTERY (verbal abuse)

1. The officer employed by the Lucretia City of Indianapolis and Indianapolis Metropolitan Police Department battered and assaulted (and/ or) acted as an accessory to the battery and assault of Lucretia Clay's person when he :

   A. Placed Lucretia Clay's person into the transport vehicle and allowed Lucretia Clay to fall onto the floor and required her to stay in that position for the entire ride due to inadequate help to secure her person on the bench and lack of safety belts —after Lucretia Clay had communicated that she could not bend her legs and with the knowledge that Lucretia Clay's hands were cuffed behind her back and her feet were shackled together preventing her from moving; and

   B. Used verbally condescending and abusive language towards Lucretia Clay after allowing her person to fall onto the floor of the inmate transport vehicle stating " Well that was dramatic" after Lucretia Clay's person had fallen to the ground due to inadequate help to secure her person on the bench and lack of safety belts —after Lucretia Clay had communicated that she could not bend her legs and with the knowledge that Lucretia Clay's hands were cuffed behind her back and her feet were shackled together preventing her from moving.

2. Andrew Thorup battered and assaulted (and/or) acted as an accessory to battery and assault to Lucretia Clay's person when he:

   A. Threatened Lucretia Clay by using offensive body language and position as a public servant to unlawfully and aggressively invade Lucretia Clay and her children's personal space in a manner that made Lucretia Clay fear for the safety of her and her children;

   B. Physically assaulted Lucretia Clay by jumping her and forcing his body weight onto Lucretia Clay from behind and forcing her into fetal position directly resulting in preventing her from moving and confining her hands into a position that would not allow her to comply with his demand to "Give Me Your Hands";

   C. Tased Lucretia Clay from behind without warning;

   D. Allowed Clay to be dragged and/or dragged Clay to the other side of the parking lot while disregarding her verbally communicating her inability to walk;

   E. Allowed Clay to be forced and/or forced Lucretia Clay to the ground on her knees after Lucretia Clay communicated that she could not bend her legs by pushing down on Lucretia Clay's shoulders and head—causing clay's tailbone to hit the pavement;

   F. Allowed Khalid Brooks to force the patrol vehicle door closed on Clay's body and head while clay lay in the police car due to injuries to her spine and back from being tased; and

   G. Allowed officer Brooks to mentally antagonized clay regarding the welfare of her children while it was noticeable that Clay was in a sensitive mental state and traumatized by the happening events.

3. Khalid Brooks battered and assaulted (and/ or) acted as an accessory to the battery and assault of Lucretia Clay's person when he:

   A. Threatened Lucretia Clay by using offensive body language and position as a public servant to unlawfully and aggressively invade Lucretia Clay and her children's personal space in a manner that made Clay fear for the safety of her and her children;

   B. Physically assaulted Lucretia Clay by jumping her and forcing his body weight onto Lucretia Clay from behind and forcing her into fetal position directly resulting in preventing her from moving and confining her hands into a position that would not allow her to comply with his demand to "Give Me Your Hands";

   C. Allowed Andrew Thorup to tase Lucretia Clay from behind without warning;

   D. Forced the patrol vehicle door closed on Lucretia Clay's body and head while Lucretia Clay lay in the police car due to injuries to her spine and back from being tased;

   E. Mentally antagonized Lucretia Clay regarding the welfare of her children, while it was noticeable that Lucretia Clay was in a sensitive mental state and traumatized by the happening events; and

   F. Allowed the Indianapolis Metropolitan police Department Inmate Transport officer to place Lucretia Clay's person into the transport vehicle and allow Lucretia Clay to fall onto the floor and required her to stay in that position for the entire ride due to inadequate help to secure her person on the bench and lack of safety belts —after Lucretia Clay had communicated that she could not bend her legs and with the knowledge that Lucretia Clay's hands were cuffed behind her back and her feet were shackled together preventing her from moving.

4. All Lawrence Police Officers at the scene of the battered and assaulted (and/ or) acted as an accessory to the battery and assault of Lucretia Clay's person when they:

   A. Allowed Clay to be dragged and/or dragged Clay to the other side of the parking lot while disregarding her verbally communicating her inability to walk;

   B. Allowed Clay to be forced and/or forced Lucretia Clay to the ground on her knees after Lucretia Clay communicated that she could not bend her legs by pushing down on Lucretia Clay's shoulders and head—causing clay's tailbone to hit the pavement;

   C. Allowed Khalid Brooks to force the patrol vehicle door closed on Clay's body and head while clay lay in the police car due to injuries to her spine and back from being tased;

   D. Allowed officer Brooks to mentally antagonized clay regarding the welfare of her children while it was noticeable that Lucretia Clay was in a sensitive mental state and traumatized by the happening events; and

   E. Allowed the Indianapolis Metropolitan police Department Inmate Transport officer to Place Lucretia Clay's person into the transport vehicle and allow Clay to fall onto the floor and required her to stay in that position for the entire ride due to inadequate help to secure her person on the bench and lack of safety belts —after Lucretia Clay had communicated that she could not bend her legs and with the knowledge that Lucretia Clay's hands were cuffed behind her back and her feet were shackled together preventing her from moving.

5. Axon acted as an accessory to the battery and assault of Lucretia Clay's person when it :

A. Failed to install verbal warning messages prior to the deploying of a taser despite its knowledge that a taser can be considered and or used as a weapon;

B. Failed to install verbal warning messages prior to the deploying of a taser despite its knowledge of past incidents of tortious and criminal acts by officers against citizens;

C. Failed to install verbal warning messages prior to the deploying of a taser despite its knowledge that officers are instructed to warn civilians prior deploying a taser.

## VI.    USE OF EXCESSIVE FORCE

1. Andrew Thorup used excessive force against Lucretia Clay's person when he:

   A. Physically assaulted Lucretia Clay by jumping her and forcing his body weight onto Lucretia Clay from behind and forcing her into fetal position directly resulting in preventing her from moving and confining her hands into a position that would not allow her to comply with his demand to "Give Me Your Hands"; and

   B. Tased Lucretia. Clay from behind without warning

2. Khalid Brooks used excessive force against Lucretia Clay's person when he:

   A. Physically assaulted Lucretia Clay by jumping her and forcing his body weight onto Lucretia Clay from behind and forcing her into fetal position directly resulting in preventing her from moving and confining her hands into a position that would not allow her to comply with his demand to "Give Me Your Hands"; and

   B. Forced his patrol vehicle door closed on Lucretia Clay's body and head while clay lay in the police car due to injuries to her spine and back from being tased;

3. All Lawrence Police Officers at the scene used excessive force against Lucretia Clay's person when they:

   A. Dragged Lucretia Clay to the other side of the parking lot while disregarding her verbally communicating her inability to walk

   B. Forced Lucretia Clay to the ground on her knees after Lucretia Clay communicated that she could not bend her legs by pushing down on Lucretia Clay's shoulders and head—causing clay's tailbone to hit the pavement.

## VII.    DEFAMATION

1. The state of Indiana defamed Lucretia Clay when it:

   A. Allowed documentation to be submitted to a public server that implied that Lucretia Clay was a criminal and involved in a criminal matter that referred to her ability to care for children—directly effecting her line of work , living environment, mental state, trust of police, happiness, and put her in direct fear of her safety for years to come; and

   B. Allowed documentation to be submitted to a public server that implied that Lucretia Clay was a criminal and involved in a criminal matter that associated get to be violent and a threat to police—directly effecting her line of work, living environment, mental state, trust of police, happiness, and put her in direct fear of her safety for years to come.

2. The city of Indianapolis defamed Lucretia Clay when it:

   A. Allowed documentation to be submitted to a public server that implied that Lucretia Clay was a criminal and involved in a criminal matter that referred to her ability to

care for children—directly effecting her line of work , living environment, mental state, trust of police, happiness, and put her in direct fear of her safety for years to come; and

B. Allowed documentation to be submitted to a public server that implied that Lucretia Clay was a criminal and involved in a criminal matter that associated get to be violent and a threat to police—directly effecting her line of work, living environment, mental state, trust of police, happiness, and put her in direct fear of her safety for years to come.

3. The City of Lawrence and the Lawrence police department defamed Lucretia Clay when it:

A. Allowed documentation to be submitted to a public server that implied that Lucretia Clay was a criminal and involved in a criminal matter that referred to her ability to care for children—directly effecting her line of work , living environment, mental state, trust of police, happiness, and put her in direct fear of her safety for years to come; and

B. Allowed documentation to be submitted to a public server that implied that Lucretia Clay was a criminal and involved in a criminal matter that associated get to be violent and a threat to police—directly effecting her line of work, living environment, mental state, trust of police, happiness, and put her in direct fear of her safety for years to come.

4. The city of Indianapolis and the Indianapolis Metropolitan police department defamed Lucretia's person when it:

A. Allowed documentation to be falsely submitted to a public server that implied that Lucretia Clay was a criminal and involved in a criminal matter that referred to her ability to care for children—directly effecting her line of work , living environment, mental state, trust of police, happiness, and put her in direct fear of her safety for years to come;

B. Allowed documentation to be falsely submitted to a public server that implied that Lucretia Clay was a criminal and involved in a criminal matter that associated get to be violent and a threat to police—directly effecting her line of work, living environment, mental state, trust of police, happiness, and put her in direct fear of her safety for years to come.

5. Andrew Thorup Defamed Lucretia Clay's Person when he:

A. Falsely submitted documentation to a public server that implied that Lucretia Clay was a criminal and involved in a criminal matter that referred to her ability to care for children—directly effecting her line of work , living environment, mental state, trust of police, happiness, and put her in direct fear of her safety for years to come; and

B. Falsely submitted documentation to a public server that implied that Lucretia Clay was a criminal and involved in a criminal matter that associated get to be violent and a threat to police—directly effecting her line of work, living environment, mental state, trust of police, happiness, and put her in direct fear of her safety for years to come.

6. Khalid Brooks Defamed Lucretia Clay's person when he:

A. Allowed documentation to be falsely submitted to a public server that implied that Lucretia Clay was a criminal and involved in a criminal matter that referred to her ability to care for children—directly effecting her line of work , living environment, mental state, trust of police, happiness, and put her in direct fear of her safety for years to come;

B. Allowed documentation to be falsely submitted to a public server that implied that Lucretia Clay was a criminal and involved in a criminal matter that associated get to be violent and a threat to police—directly effecting her line of work, living environment, mental state, trust of police, happiness, and put her in direct fear of her safety for years to come.

## VIII.    MALICIOS PROSECUTION AND OBSTRUCTION OF JUSTICE

1. Andrew Thorup Defamed Lucretia Clay's Person when he:

    A. Falsely submitted documentation to a public server that implied that Lucretia Clay was a criminal and involved in a criminal matter that referred to her ability to care for children—directly effecting her line of work , living environment, mental state, trust of police, happiness, and put her in direct fear of her safety for years to come; and

    B. Falsely submitted documentation to a public server that implied that Lucretia Clay was a criminal and involved in a criminal matter that associated get to be violent and a threat to police—directly effecting her line of work, living environment, mental

state, trust of police, happiness, and put her in direct fear of her safety for years to

come

2. Khalid Brooks Defamed Lucretia Clay's person when he:

    A. Allowed documentation to be falsely submitted to a public server that implied that

       Lucretia Clay was a criminal and involved in a criminal matter that referred to her

       ability to care for children—directly effecting her line of work , living environment,

       mental state, trust of police, happiness, and put her in direct fear of her safety for

       years to come; and

    B. Allowed documentation to be falsely submitted to a public server that implied that

       Lucretia Clay was a criminal and involved in a criminal matter that associated get to

       be violent and a threat to police—directly effecting her line of work, living

       environment, mental state, trust of police, happiness, and put her in direct fear of her

       safety for years to come.

53.)     Plaintiffs, Lucretia Clay, Demethrice Clay, Henry McNeal III, and Harrison

    McNeal, as a result of this incident caused by Defendants, suffered damages including

    but not limited to: Extreme emotional distress, mental anguish, psychological trauma,

    anxiety, pain, and suffering, and/ or other forms of losses or costs.

54.)     The Plaintiff's injuries were directly and proximately caused by the carelessness,

    negligence, false imprisonment, intentional infliction of emotional distress, illegal and

    unreasonable search and seizure, assault and battery, use of excessive force, defamation,

    malicious prosecution, and obstruction of justice. These failings are mentioned

58.)     As a direct and approximate result of carelessness, negligence, false imprisonment, intentional infliction of emotional distress, illegal and unreasonable search and seizure, assault and battery, use of excessive force, defamation, malicious prosecution, and obstruction of justice, of the Defendants, the Plaintiff, Demethrice Clay, Henry McNeal III, and Harrison McNeal are entitled to recover all forms of compensatory damages, both permanent and temporary in nature, as well as costs of all medical and/ or psychological treatment. To treat their injuries and lessen her pain and suffering,

59.)     As a direct result of carelessness, negligence, false imprisonment, intentional infliction of emotional distress, illegal and unreasonable search and seizure, assault and battery, use of excessive force, defamation, malicious prosecution, and obstruction of justice of the Defendants, the Plaintiff, Lucretia Clay, has been damaged.

60.)     As a direct result of carelessness, negligence, false imprisonment, intentional infliction of emotional distress, illegal and unreasonable search and seizure, assault and battery, use of excessive force, defamation, malicious prosecution, and obstruction of justice, of the Defendants, the Plaintiffs, Demethrice Clay, Henry McNeal III, and Harrison McNeal have been damaged.

61.)     The prerequisites have been satisfied under the Indiana Tort Claim Act

62.)     Alternatively, the actions of all Defendants, namely, Andrew Thorup, Khalid Brooks, The City of Lawrence, The City of Indianapolis, The State of Indiana, The

throughout this document but are not limited to the circumstances provided in this document

55.)    The acts and/ or omissions of the Defendants violated Indiana law and were without a valid legal excuse or justification.

56.)    As a direct and proximate result of carelessness, negligence, false imprisonment, intentional infliction of emotional distress, illegal and unreasonable search and seizure, assault and battery, use of excessive force, defamation, malicious prosecution, and obstruction of justice of the Defendants, the Plaintiff, Lucretia Clay, Demethrice Clay, Henry McNeal III, and Harrison McNeal sustained extreme emotional distress and mental anguish which resulted in stress, anxiety, and may require psychological therapy

57.)    As a direct and approximate result of carelessness, negligence, false imprisonment, intentional infliction of emotional distress, illegal and unreasonable search and seizure, assault and battery, use of excessive force, defamation, malicious prosecution, and obstruction of justice, of the Defendants, the Plaintiffs, Lucretia Clay, is entitled to recover all forms of compensatory damages, both permanent and temporary in nature, as well as costs of all medical and/ or psychological treatment. To treat her injuries and lessen her pain and suffering, Plaintiff, Lucretia Clay,  has attempted to engage the services of healthcare providers/ therapists and may incur in the future additional reasonable medical/ psychological expenses for such treatment.

Lawrence Police Department, The Indianapolis Metropolitan Police Department, Axon Enterprise Inc. ,and all other officers and EMT staff present on August 30, 2022, were intentional in nature and designed to inflict emotional distress and mental anguish entitling the Plaintiffs, Lucretia Clay, Demethrice Clay, Henry McNeal II, and Harrison McNeal to recover all forms of compensatory damages outlined above, as well as exemplary damages.

WHEREFORE, Plaintiffs, Lucretia Clay, by Pro se, individually and as the legal guardian of minors:  ; Demethrice Clay, a minor  by his mother and next best friend;  Henry McNeal III, a minor  by his mother and next best friend; Harrison McNeal, a minor  by his mother and next best friend, prays that the court grants judgment in their favor and against Defendants, named above in an amount which will fully and fairly compensate them for all of their emotional injuries, emotional pain and suffering, mental anguish, medical expenses, loss of time, loss of enjoyment of life, loss of activities of daily living, loss of income, and other losses  incurred, or which are reasonably expected to be incurred in the future and all other forms of damages or losses, that may arise due to the above mentioned incidents, for costs in bringing this action for prejudgment interest, exemplary damages, and all other just and proper relief in the premises'.

**Lucretia Clay**

**1114 W. 8th  Street**

**Muncie, IN. 47302**

**P: 317- 732- 7597**

**Pro Se for plaintiffs**

## REQUEST FOR JURY BY TRIAL

Comes now the Plaintiffs, Lucretia Clay, by Pro se ; Demethrice Clay, a minor  by his mother
and next best friend;  Henry McNeal III, a minor  by his mother and next best friend; Harrison
McNeal, a minor  by his mother and next best friend, and requests trial by jury pursuant to
Indiana Trial Rule 38.


**Lucretia Clay**
**Pro Se for plaintiffs**
**Write.Just.LuGal@gmail.com**