**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| LUCRETIA CLAY, | ) |
| | ) |
| Plaintiff, | ) **NO. 1:25-CV-00018-JPH-TAB** |
| | ) |
| vs. | ) **JURY DEMAND REQUESTED** |
| | ) |
| ANDREW THORUP, in his individual and official | ) |
| Capacity, KHALID BROOKS, in his individual | ) |
| And official capacity, THE CITY OF LAWRENCE, | ) |
| LAWRENCE POLICE DEPARTMENT, THE CITY | ) |
| OF INDIANAPOLIS, THE CITY OF LAWRENCE | ) |
| EMT,  AXON ENTERPRISE INC, THE STATE OF | ) |
| INDIANA, AND INDIANAPOLIS METROPOLITAN | ) |
| POLICE DEPARTMENT | ) |
| | ) |
| Defendants | ) |

**<u>AMENDED COMPLAINT FOR DAMAGES</u>**

Comes now the plaintiff, Lucretia Clay, by way of Pro Se pursuant to FRCP 15(1)(b) on

January 23, 2025  against the Defendants: Andrew Thorup, Khalid Brooks, The City of

Lawrence Police Department, The city of Lawrence, The City of Lawrence EMT, The City of

Indianapolis Police Department (collectively "IMPD"), The City of Indianapolis, and The State

of Indiana , and alleges and asserts the following:

Complaint Page: 1 OF 49

**AMENDED DETAILS**

A. Plaintiffs Demethrice Clay, Henry McNeal III, and Harrison McNeal have been removed from this case and their names have been changed to initials when documented in this proceeding;

B. Defendants "The officer employed by the City of Indianapolis and Indianapolis Metropolitan Police Department" has been removed from this case;

C. Facts pertaining to Lucretia Clay's attempt to obtain access to Public Document's Request have been added (Legal Claims 60-69);

D. Details pertaining to the immediate strain put on Lucretia Clay's mental health have been added for all officers in the categories of "Negligence, and Intentional Infliction of Emotional Distress, etc.. ";

E. A short statement regarding Jurisdiction has been added "23(A)"

F. Previous claim "I Negligence 1(A.) "against the State of Indiana has been removed and replaced with a new claim of negligence;

G. Emotional distress and defamation claims were added for The City of Lawrence and The State of Indiana;

H. "See STATEMENT OF FACTS 1-69 and 70-77" have been added to all Legal Claims headings;

I. Today's date, Plaintiffs Signature, Page Numbers, lowercase roman numeral and lowercase alphabetical letters,  Text reading "STATEMENT OF FACTS (CONTINUED)",  UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF INDIANA INDIANAPOLIS DIVISION, the new federal case number: 1:25-CV-00018-JPH-TAB, the caption " AMENDED COMPLAINT FOR DAMAGES", and FRCP 15(1)(b) have been added, ; and

J.  A prayer for relief has been added.

## **PARTIES**

1.)     That at all times mentioned herein, Plaintiff Lucretia Clay, was an individual

residing in the State of Indiana, City of Indianapolis, County of Marion.

2.)     The Lawrence Police Department is a political subdivision, or agent of a political

subdivision and has been put on notice of plaintiff's claim pursuant to Ind. Code

34-13-3 and has neither admitted nor denied claim.

3.)     The City of Lawrence is a political subdivision, or agent of a political subdivision

and has been put on notice of plaintiff's claim pursuant to Ind. Code 34-13-3 and

has neither admitted nor denied claim.

4.)     The Metropolitan Police Department is a political subdivision, or agent of a

political subdivision and has been put on notice of plaintiff's claim pursuant to

Ind. Code 34-13-3 and has neither admitted nor denied claim.

5.)     The City of Indianapolis is a political subdivision, or agent of a political

subdivision and has been put on notice of plaintiff's claim pursuant to Ind. Code

34-13-3 and has neither admitted nor denied claim.

6.)     The State of Indiana is a political subdivision, or agent of a political subdivision

and has been put on notice of plaintiff's claim pursuant to Ind. Code 34-13-3 and

has denied claim

7.)     That all times mentioned herein Defendant, Officer Andrew Thorup (Collectively

"Andrew Thorup"), was acting as a government employee within the scope of his

employment with The City of Lawrence and The Lawrence Police Department.

8.) That all times mentioned herein Defendant, Officer Khalid Brooks (Collectively "Khalid Brooks"), was acting as a government employee within the scope of his employment with The City of Lawrence and The Lawrence Police Department.

9.) That all times mentioned herein, Defendant, "City of Lawrence EMT", was an active government entity, of the county of Marion, State of Indiana and was acting as a government employee within the scope of his employment with The City of Lawrence.

10.) That all times mentioned herein, Defendant, "Officers of Lawrence Police Department", was an active government entity, of the county of Marion, State of Indiana and was acting as a government employee within the scope of his employment with The City of Lawrence It should be noted that in good faith:

A. Lucretia Clay, has attempted to gain access to body worn footage and was approved access to such footage in 2023, but has yet to be presented with the opportunity to see such footage;

B. Had Lucretia Clay been able to access footage sooner, Lucretia Clay would have had exact names to insert into this section of the claim; and

C. Therefore, Lucretia Clay requests the ability to add additional names to this claim in the future, depending on when access is granted to public records or discovery begins—whichever, takes place sooner.

11.) That all times mentioned herein, Defendant, Lawrence Police Department, was an active government entity, of the County of Marion, State of Indiana.

12.) That all times mentioned herein, Defendant, The City of Lawrence, was an active government entity, of the County of Marion, State of Indiana.

13.) That all times mentioned herein, Defendant, Indianapolis Metropolitan Police Department, was an active government entity, of the County of Marion, State of Indiana.

14.) That all times mentioned herein, Defendant, The City of Indianapolis, was an active government entity, of the County of Marion, State of Indiana.

15.) That all times mentioned herein, Defendant, The State of Indiana, was an active government entity, of the State of Indiana, County of United States.

16.) That at all times mentioned herein, Defendant, Axon Enterprise Inc's headquarters is located in Scottsdale, Ariona, United States of America with another office in New York, New York, United States

17.) That at all times mentioned herein, Defendant, Axon Enterprise Inc., had an active contract with The City of Lawrence and Lawrence Police Department, and was a incorporated business that was licensed to conducted business and sales in the State of Indiana, City Of Lawrence, County of Marion

18.) That at all times mentioned herein, Defendant, Axon Enterprise Inc's is a corporation incorporated under the laws of the state of Arizona having its principal place of business in the state of Arizona and an additional office location in New York [states other than the state of Indiana, where the incident occurred].

## **PREFERRED VENUE**

23.) Preferred venue exists in Marion County, Indianapolis pursuant to Indiana Trial Rule 75(A)(5)

A.                                   **JURISDICTION**

On January 3, 2025, this case was removed from state court to Federal Court by

Defendants, pursuant to 28 U.S. C. §  1331.

**STATEMENT OF FACTS**

24.)    At all times relevant to this complaint, the acts and omissions alleged against the

Defendant Axon Enterprise Inc. and Governmental Defendants, City of Lawrence,

City of Indianapolis, State of Indiana, City of Lawrence Police Department, and

Indianapolis Metropolitan Police Department, City of Lawrence EMT were

performed and/or omitted by and through the agents, servants, employees and

representatives of the Defendant, and each of them while acting within the scope

and course of their employment. Alternatively, if the Defendant Axon Enterprise

Inc. and Governmental Defendants, City of Lawrence, City of Indianapolis, State

of Indiana, City of Lawrence Police Department, Indianapolis Metropolitan Police

Department, and the City of Lawrence EMT were acting *ultra vires*, then (he/ she/

they/ it) is/ are personally liable in (his/ her/ their/ it's) individual capacity. .

25.)    That on or about August 30, 2022, Lucretia clay and her three children DC, HM

III, HM were commuting in their family vehicle when Lucretia Clay felt her car

lag from a flat tire.

A.    Lucretia Clay pulled over to the side of the road near residential houses and

attempted to use her air pump to air up her tire;

B.    Due to Lucretia Clay's initial stop location. being in an area with homes that ran on

a busy one-way street, Lucretia Clay accidentally passed the point of entry; and

Complaint Page: 6 OF 49

C.   Clay slowly proceeded to search for a safe area to pull her car over to air up her tire;

D.   Prior to Lucretia Clay turning into the safe area, Andrew Thorup veered behind Lucretia Clay turning into the parking lot directly behind her; and

E.   All the children were wearing their seatbelt for the full duration of this transaction.

26.)   On or about August 30, 2022, Lucretia Clay pulled her family vehicle over into 12 Stones parking lot located at 12130 Pendleton Pike Indianapolis, Indiana, 46236

A.   Andrew Thorup—without asking Lucretia Clay for identification—told Lucretia clay that he had gotten a call regarding her having a flat tire;

B.   When Lucretia Clay initially spoke to Andrew Thorup, Lucretia Clay noted that she was in the process of handling the flat tire; and

C.   Andrew Thorup appeared to leave the scene, after hearing Lucretia Clay say she will handle the flat tire.

27.)   That on or about August 30, 2022, Lucretia Clay proceeded to get her air pump out of her trunk and attempted to air up the tire.

28.)   That on or about August 30, 2022, after airing up her tire, Lucretia Clay proceeded to get into her vehicle and continued to head westbound on Pendleton pike

A.   As Lucretia Clay drove down Pendleton Pike, Lucretia Clay realized that her tire began to lose air again;

B.  Lucretia Clay remembered that there was a Jiffy Lube, a tire service station, down the way;

C.  Lucretia Clay turned on her hazard lights and proceeded in the far-right lane at a rate under the speed limit;

D.  Lucretia Clay neared her destination and turned at the light on the intersection of Pendleton Pike and Sunnyside Road;

E.  Lucretia Clay immediately turned again at the side street entrance of Sunnyside Road and 59th Street;

F.  Lucretia Clay then realized that she was not able to access Jiffy Lube via that route;

G.  Lucretia Clay then turned into a parking space at Indiana Immediate Care located at 10950 Pendleton Pike, Indianapolis, Indiana, 46236;

H.  Lucretia Clay notices a patrol car, that was later found to be driven by Khalid Brooks, speed past the entrance of Indiana Immediate Care—at a high rate of speed;

I.  Lucretia Clay reversed the car and proceeded to the southern exit of the parking lot, turning west bound onto Pendleton Pike; and

J.  Lucretia Clay drove for about six seconds and then turned into the Jiffy Lube parking lot, located at 5859 N. German Church Rd.

29.)    That On or about August 30, 2022, Lucretia Clay turned into the Jiffy Lube parking lot, and drove the family vehicle up to the tire changing station

Complaint Page: 8 OF 49

A.   Lucretia Clay turned her car off, got out of the car, and walked to the front of her car, approached the Jiffy Lube employee and asked for help; and

B.   DC, HM III, and HM remained in the car and watched their mother.

30.)   That On or about August 30, 2022, Andrew Thorup drove into the Jiffy Lube parking lot, located at 5859 N. German Church Rd.  with his sirens on, parked his patrol vehicle, and aggressively got out of the vehicle—yelling at Lucretia Clay " You said you would park the car"

A.   Lucretia Clay then informed Andrew Thorup that there were no mentions that she would park the car;

B.   After hearing Lucretia Clay's response, Andrew Thorup, while still yelling, aggressively walked towards Lucretia Clay and Lucretia Clay's family vehicle— where DC, HM III, and HM resided in the car;

C.   Andrew Thorup continued to walk towards Lucretia Clay, yelling that he would be towing her family vehicle;

D.   Lucretia Clay tells Andrew Thorup that it would be illegal to tow her car; and

E.   Lucretia Clay attempts  to walk back to her vehicle and get into the car to ensure the safety of her and her children from Andrew Thorup.

31.)   That, as a direct proximate result of Thorup's, threatening body language, aggression, and abuse of status, Lucretia Clay became afraid for the safety of her sons DC, HM III, and HM, and herself.

32.) That as a direct proximate result of Andrew Thorup's negligence, Andrew Thorup did not ask Lucretia Clay for identification—prior to interacting with Lucretia Clay.

33.) That as a direct and proximate result of Andrew Thorup's threatening body language, aggression, and abuse of status, Lucretia Clay felt the need to seek safety within her vehicle to protect DC, HM III, and HM, and herself.

34.) That on or about August 30, 2022, Khalid Brooks drove into the Jiffy Lube parking lot, located at 5859 N. German Church Rd with his sirens on following Andrew Thorup.

A. Khalid Brook parked his patrol vehicle and exited his vehicle.

35.) That on or about August 30, 2022, Lucretia Clay attempted to seek safety for her sons DC, HM III, and HM, and herself within their family vehicle.

A. Andrew Thorup yelled to tell Lucretia Clay that she would be going to jail;

B. Lucretia Clay has no recollection of Andrew Thorup verbally telling her that she is under arrest;

C. Andrew Thorup did not read Lucretia Clay her memorandum rights;

D. In fear of Andrew Thorup, Lucretia Clay grabbed onto the bottom of her shirt; and

E. Andrew Thorup then jumped Lucretia Clay, assisted by Khalid Brooks, from behind and began to yell "Give me your hands".

36.) That on or about August 30, 2022, Andrew Thorup physically assaulted Lucretia Clay by jumping her and forcing his body weight onto Lucretia Clay from behind and forcing her into fetal position—directly resulting in preventing her from

moving and confining her hands into a position that would not allow her to comply with his demand to "Give Me Your Hands"

A.  Andrew Thorup yelled that clay was resisting arrest;

B.  Clay screamed that she was not resisting several times; and

C.  Khalid Brooks eventually lifted Lucretia Clay's back just enough for Lucretia Clay to get her hands free and place her right hand behind her back.

37.)  That on or about August 30, 2022, Andre Thorup physically assaulted Lucretia Clay by tasing Lucretia Clay from behind without warning.

A.  Andrew Thorup tased Lucretia Clay in her spine and in her side.

38.)  That on or about August 30, 2022, Khalid Brooks saw Andrew Thorup aggressively attacking Lucretia Clay and ran over to Lucretia Clay to assist Andrew Thorup with physically assaulting Lucretia Clay by jumping her and forcing his body weight onto Lucretia Clay, from behind, and forcing her into fetal position— directly resulting in preventing her from moving and confining her hands into a position that would not allow her to comply with his demand to "Give Me Your Hands"

A.  At the time Lucretia Clay weighed 107 lbs.;

B.  At the time Lucretia Clay's height was 5 ft. 3 in.;

C.  Lucretia Clay was forced into a fetal position with her chest to her knees and her hands jammed between her inner thighs, her forearms were wedged between her upper thigh, hip, and rib cage—while both officers forced their way onto Lucretia Clay's back, making it impossible for her to remove her hands while yelling for clay to give them her hands;

D.   Khalid Brooks eventually lifted just enough for Lucretia Clay to get her hands free and place her right hand behind her back;

E.   DC, HM III, and HM yelled, screamed, and cried in the car while watching Lucretia Clay be assaulted; and

F.   Andrew Thorup and Khalid Brooks handcuffed Lucretia Clay and stood her up on her  feet.

39.)   That as a direct and proximate result of Andrew Thorup Tasing Lucretia Clay, Lucretia Clay was unable to bend her legs.

40.)   That On or about August 30, 2022, other officers pulled up to the Jiffy Lube located at 7969 Pendleton Pike Indianapolis, Indiana and assist Andrew Thorup and Khalid Brooks with apprehending Lucretia Clay.

A.   Lucretia Clay communicated to officers that she was unable to bend her legs to walk;

B.   Officers dragged Lucretia Clay to the opposite side of the Jiffy Lube parking lot—scraping her bare toes and foot on the cement;

C.   Multiple officers stood and watched Lucretia Clay be dragged along the pavement to the other side of the Jiffy Lube parking lot;

D.   Officers attempted to force Lucretia Clay onto her knees--on the ground--after placing shackles on her ankles;

E.   Lucretia Clay continued to plead with officers that she cannot bend her legs;

F.   Officers forced Lucretia Clay to bend her knees by pushing down on her shoulders and head , and eventually shoved Lucretia Clay to the ground;

G.     Officers shoved Lucretia Clay so hard to the ground that her tail bone hit the ground; and

H.     Lucretia Clay screamed and bounced back up to her feet.

41.)     That On or about August 30, 2022, Lucretia Clay yelled out her mother's number into a crowd of bystanders and asked that someone call her mother.

A.     A bystander went to look after Lucretia Clay's children until her mother arrived;

B.     A bystander calls Lucretia Clay's mother to come and get her children;

C.     After a few minutes Lucretia Clay's mother and stepfather arrived at the scene;

D.     Kathleen Clay (maiden name) attempts to retrieve DC, HM III, and HM;

E.     Andrew Thorup refused to release DC, HM III, and HM into their grandmother's care; and

F.     DC, HM III, and HM were eventually released to Kathleen Clay.

42.)     That on or about August 30, 2022, Andrew Thorup asked Lucretia Clay for her name.

43.)     Lucretia Clay refused to answer Andrew Thorup;

A.     Andrew Thorup walked over to Lucretia Clay's family vehicle;

B.     Lucretia Clay yelled that she does not consent for Andrew Thorup to search or enter her car;

C.     Andrew Thorup proceeded to search Lucretia Clay's Car; and

D.     Thorup went into Lucretia Clay's purse to retrieve her ID

44.)     That on or about August 30, 2022, officers lay Lucretia Clay into Khalid Brooks Patrol Vehicle

A.     Khalid Brooks slammed the right rear door onto Lucretia Clay's legs;

Complaint Page: 13 OF 49

B.    Khalid Brooks purposely slammed the left rear door onto Lucretia Clay's head to
      shut

   Clay into the Patrol Vehicle;

C.    Khalid Brooks was forced to leave the doors open; and

D.    Khalid Brooks proceeded to get into the patrol vehicle  and verbally threatened the
      wellbeing of Lucretia Clay's children in the presence of Lucretia Clay to
      antagonize Lucretia Clay

45.)    On or about August 30, 2022, Lucretia Clay's stepfather Robert Edwards
        approached Khalid Brook's patrol car to speak with Lucretia Clay

A.    Robert Edwards proceeded to hold Lucretia Clay's legs up to help Lucretia Clay
      with pain while she lay in Khalid Brooks Patrol vehicle;

46.)    On or about August 30, 2022, an ambulance (EMT) arrived at Jiffy Lube, located
        at 7969 Pendleton Pike, Indianapolis, Indiana 46236.

A.    Initially, Lucretia Clay refused medical treatment;

B.    Lucretia Clay eventually requested medical attention; and

C.    The EMT staff looked at Lucretia Clay's back and stated that Lucretia Clay was fine
      because they did not (see anything on Lucretia Clay's back).

47.)    On or about August 30, 2022, officers questioned Lucretia Clay's stepfather,
        Robert Edwards, rather or not Lucretia Clay was mentally ill because of the way
        that  Lucretia Clay responded to the officer's abuse

A. Lucretia Clay did not show any signs of mental illness prior to the altercation on
        August 30, 2022.

48.)    On or about August 30, 2022, an Indianapolis Metropolitan Police Department

(IMPD) inmate transport vehicle arrived at the Jiffy Lube parking lot, located at 7969  Pendleton Pike, Indianapolis, IN, 46236

A. The IMPD officer who is responsible for driving the inmate transport vehicle, was notified by Lucretia Clay that she could not bend her legs;

B. The IMPD Officer proceeded to lift Lucretia Clay into the inmate transport vehicle, at which time the officer allowed Clay to fall onto the floor of the vehicle;

C. The IMPD officer proceeded to call Lucretia Clay dramatic and close the vehicle door; and

D. Clay rode to the Marion County processing center, located at 675 Justice Way, Indianapolis, Indiana, 46203 face down on the floor in tears.

49.)     On or about August 30, 2022, Lucretia Clay was detained for resisting arrest with injury, neglect of dependents, attempting to disarm an officer, and disorderly conduct

A. Lucretia Clay stood the entire time she was at 675 Justice Way, Indianapolis, Indiana, 46203, due to inability to bend her legs;

B. Lucretia Clay was barefoot for majority of the time she was detained at 675 Justice Way, Indianapolis, Indiana, 46203;

C. Lucretia Clay met with a representative of the jail to submit her remarks about the incident that had occurred;

D. Lucretia Clay was released on a $500 bond; and

E. As part of the terms for Lucretia Clay's release, she was forced to give the state of Indiana a DNA swab

50.)  On or about August 30, 2022, Andrew Thorup falsified the police report pertaining to Lucretia Clay's arrest by stating that Lucretia Clay attempted to retrieve Khalid Brooks Gun or physically assaulted Khalid Brooks, and etc.

51.)  On or about August 30, 2022, Andrew Thorup neglected to submit a use of force report pertaining to Lucretia Clay being tased

52.)  On or about August 30, 2022, Lucretia Clay, DC, HM III, and HM family vehicle was towed at the request of the Lawrence Police Department  :

    A.  Lucretia Clay had two licensed  drivers at the scene who were able to become the responsible party for Lucretia Clay's family vehicle to prevent the vehicle from being towed by the city and tow fees

    B.  Andrew Thorup stole Lucretia Clay's Identification

    C.  Without Identification, Lucretia Clay had  a very hard time presenting the documentation needed for her to get her family vehicle out of tow

53.)  The state appointed attorney that was appointed to Lucretia Clay, told Lucretia Clay that he did "not like her kind", and

54.)  On September 03, 2022–Lucretia Clay submitted a public records request to Indianapolis Public Records for the body camera and surveillance regarding the incident on August 30, 2022

55.)  On September 13, 2022–Charges were filed with the state of Indiana against Lucretia Clay.

56.)  On September 29, 2022–Clay received notice that the Public Record request could not be fulfilled.

57.)    On November 09, 2022–Clay had a pretrial conference for case number 49D232209-F6-024852 During the pretrial conference the appointed judge lifted the protective order from the video surveillance and required that the party bringing charges against Lucretia provide her with her own copy of the body worn footage.

The judge scheduled a second hearing for the following week on November 16, 2022—due to Lawrence Police Department neglecting to send the footage to prosecutors prior to that hearing.

58.)    On November 16, 2022–Prosecutors received the video surveillance the morning of November 16, 2022, the day of the rescheduled pretrial, giving prosecutors no time to go through the recordings before releasing them to Clay.

59.)    On or about December 06, 2022–An order for dismissal was filed in case 49D232209-F6-024852 and the recording was never shared with Clay.

60.)    On February of 2022–Clay filed a tort complaint against the City of Lawrence.

61.)    On July 2, 2022–Clay sent a Public Records Request to the City of Lawrence stating :

62.)    "I, Lucretia Clay, am seeking the following information, in response to an incident brought forth against my person—by the City of Lawrence Police Department— occurring on August 30, 2022, between the hours of 17:30P.M. and 20:00 P.M: (1). All experts witness testimonies of the city of Lawrence police department— pertaining to the events surrounding Lucretia Clay on 08/30/2022, between 17:30 P.M- 20:00PM. (2) List of disciplinary actions taken against Andrew Thorup/43310, during the duration of his employment with The City of

Lawrence Police Department. (3). List of disciplinary actions taken against Khalid Brooks, during the duration of his employment with The City of Lawrence Police Department. (4).List of all complaints filed against Andrew Thorup/43310, during the duration of his employment with The City of Lawrence Police Department. (5). List of all complaints filed against Khalid Brooks, during the duration of his employment with The City of Lawrence Police Department. (6). Any information on file complaints, public/ civilian complaints, altercations involving officers in a character dispute, arrest history on file, positive test results for substance abuse, or mental evaluation results on file for officer Khalid Brooks. (15). Full known police career work history of Officer Andrew Thorup/43310. 16. Full known police career work history of Officer Khalid Brooks Some information requested in this public records request is to note the credibility and behaviors of the officers prior to or occurring after 08/30/2022."

63.) On July 18, 2023 --The City of Lawrence denied Lucretia Clay's request for public record.

64.) The City of Lawrence refused to provide Lucretia Clay with all but one of the requests submitted. The City of Lawrence did provide Lucretia Clay with documentation, pertaining to the associated taser company's name but not the complete request.

65.) On August 16, 2023 Plaintiff, submitted a letter to Public Access Counselor requesting that the matter be investigated.

66.) The public Access Counselor reached out to the Defendant, City of Lawrence, requiring that they allow Lucretia Clay to view records

Complaint Page: 18 OF 49

67.) On August 22, 2023 Plaintiff received an email from Attorneys for the city of Lawrence requesting Lucretia Clay call about the public records request

68.) Lucretia Clay called and told the Attorney for The City of Lawrence that she was thankful for the offer and was not in any way denying the offer, but was waiting to hear back from the Public Access Counselor then would be in touch (Lucretia has evidence of conversation).

69.) Attorney for the city of Lawrence told the Public Access Counselor that Lucretia Clay denied the opportunity to see the record (Lucretia Clay has email threads as evidence of this conversation) and The City of Lawrence never responded to Lucretia Clay regarding scheduling a time to view the records.

## **LEGAL CLAIMS**

I. **NEGLEGENCE** **See: STATEMENTS OF FACTS (1-69 and 70-77)**

   i. **The state of Indiana neglected its duty to Lucretia Clay when it:**

     a. Appointed a public defender to Lucretia Clay's case, who showed an unusually high level of bias when Lucretia Clay considered proceeding in her criminal case pro se, resulting in Lucretia Clay becoming emotionally damaged; and

     b. Failed to screen the State appointed public defender appointed to Lucretia Clay's case, resulting in Lucretia Clay becoming emotionally damaged.

   ii. **The city of Lawrence (Lawrence police department) neglected it's duty to Lucretia Clay when it:**

Complaint Page: 19 OF 49

a.  Appointed an attorney over it's public records dealings, who defamed Lucretia Clay, through writing (libel); resulting in the delay of Lucretia Clay accessing public records relating to this case;

b.  Failed to adequately train Andrew Thorup to comply with a reasonable policy against assault, battery, false arrest, false imprisonment, witness intimidation, and obstruction of justice despite its knowledge of past incidents of tortious and criminal acts by officers against citizens;

c.  Failed to adequately train Khalid Brooks to comply with a reasonable policy against assault, battery, false arrest, false imprisonment, witness intimidation, and obstruction of justice despite its knowledge of past incidents of tortious and criminal acts by officers against citizens;

d.  Failed to adequately train all Lawrence Police Officer who reported to the scene to comply with a reasonable policy against assault, battery, false arrest, false imprisonment, witness intimidation, and obstruction of justice despite its knowledge of past incidents of tortious and criminal acts by officers against citizens; and

e.  Engaged in falsifying evidence and information to delay and mislead a lawful investigation by not allowing Lucretia Clay access to public records (that she had been previously approved access to).

iii.  **The City of Indianapolis and Marion County neglected their duty to Clay when it :**

a.  Failed to adequately train Transport Officers to comply with a reasonable policy against assault, battery, transport of a prisoner, and obstruction of justice despite its knowledge of past incidents of tortious and criminal acts by officers against citizens;

b.  Failed to adequately train jail employees on the storing of prisoner's documented statements obtained at the time of processing;

c.  Unlawful imprisoned Lucretia Clay based on hearsay without conducting its own investigation of events prior to accepting responsibility of Lucretia Clay's Person as a prisoner in the  Indianapolis Police Department's transport vehicle and processing center at 675 Justice Way, Indianapolis, IN, 46203; and

d.  Unlawfully took Lucretia Clay's DNA (against her will) as a condition for her to be released on bond—in violation of Lucretia Clay's religious beliefs and freedom of religious expression also in violation of Lucretia Clay's First Amendment Right.

iv.   **The EMT associated with Lawrence and or Marion County (that arrived on the scene on the day in question) neglected their duty to Lucretia when they:**

a.  Failed to thoroughly check and treat Lucretia Clay following her consent to be checked out.

v.   **Andrew Thorup neglected his duty to Lucretia Clay when he:**

a.   Failed to request Lucretia Clay's identification during introduction;

b.   Threatened Lucretia Clay by using offensive body language and position as a public servant;

c.  Physically assaulted Lucretia Clay by jumping her and forcing his body weight onto Lucretia Clay from behind and forcing her into fetal position directly resulting in preventing her from moving and confining her hands into a position that would not allow her to comply with his demand to "Give Me Your Hands";

d.  Failed to read Lucretia Clay her memorandum rights at the time of arrest;

e.  Tased Lucretia Clay from behind without warning;

f.  Allowed Lucretia Clay to be dragged to the other side of the parking lot while disregarding her verbally communicating her inability to walk;

g.  Allowed Clay to be forced to the ground on her knees, after Lucretia Clay communicated that she could not bend her legs;

h.  Falsified his police report pertaining to the events that took place, by stating that Lucretia Clay attempted to retrieve Khalid Brooks Gun, or physically assaulted Khalid Brooks, etc.;

i.  Failed to complete a use of force report (separate from the police report) specifically relating to the use of a taser or deadly weapon on a civilian;

j.  Failed to intervein when Lucretia Clay was physically assaulted by Khalid Brooks when he forced his body weight onto Lucretia Clay from behind and forced her into fetal position directly resulting in preventing her from moving and confining her hands into a position that would not allow her to comply with his demand to "Give Me Your Hands";

k.  Failed to intervein when Lucretia Clay was dragged to the other side of the parking lot by fellow officers, while disregarding her verbally communicating her inability to walk;

l.  Failed to intervein when Lucretia Clay was forced to the ground on her knees by fellow officers, after Lucretia Clay communicated that she could not bend her legs;

m.  Failed to intervein when Khalid Brooks forced the patrol vehicle door closed onto Lucretia Clay's body and head while Lucretia Clay, lay in the police car due to injuries to her spine and back from being tased;

n.  Failed to intervein when Khalid Brooks was mentally antagonizing Lucretia Clay regarding the welfare of her children while it was noticeable that Lucretia Clay was in a sensitive mental state and traumatized by the happening events;

o.  Failed to intervein when Lucretia Clay was going to be transported by the IMPD officer employed by Indianapolis Metropolitan Police Department who placed Lucretia Clay's person into the inmate transport vehicle and allowed Lucretia Clay to fall onto the floor due to inadequate help to secure her person on the bench and lack of safety belts —after Lucretia Clay had communicated that she could not bend her legs and with the knowledge that Lucretia Clay's hands were cuffed behind her back and her feet were shackled together preventing her from moving;

p.  Battered Lucretia Clay in the presence of DC, HM III, and HM, causing a strain on Lucretia Clay's immediate mental health; and

q.  Restrained DC, HM III, and HM when they were to be released to Kathleen Clay (Maiden Name), causing a strain on Lucretia Clay's immediate mental health

vi.  **Khalid Brooks neglected his duty to Lucretia Clay when he:**

a. Failed to request Lucretia Clay's identification during introduction;

b. Threatened Lucretia Clay by using offensive body language and position as a public servant;

c. Physically assaulted Lucretia Clay by jumping her and forcing his body weight onto Lucretia Clay from behind and forcing her into fetal position directly resulting in preventing her from moving and confining her hands into a position that would not allow her to comply with his demand to "Give Me Your Hands";

d. Failed to read Lucretia Clay her memorandum rights at the time of arrest;

e. Allowed Lucretia Clay to be dragged to the other side of the parking lot while disregarding her verbally communicating her inability to walk;

f. Allowed Lucretia Clay to be forced to the ground on her knees after Lucretia Clay communicated that she could not bend her legs;

g. Forced the patrol vehicle door closed on Lucretia Clay's body and head while Lucretia Clay lay in the police car due to injuries to her spine and back from being tased;

h. Mentally antagonized Lucretia Clay regarding the welfare of her children while it was noticeable that Lucretia Clay was in a sensitive mental state and traumatized by the happening events;

i. Allowed officer Andrew Thorup to falsify his police report, pertaining to the events that took place without coming forward and correcting the false allegations;

j. Failed to intervein when Lucretia Clay was physically assaulted by Andrew Thorup, when jumping her and forcing his body weight onto Lucretia Clay from behind and forcing her into fetal position directly resulting in preventing her from moving and

confining her hands into a position that would not allow her to comply with his demand to "Give Me Your Hands";

k. Failed to intervein when Andrew Thorup tased Lucretia Clay in her spine and side without warning;

l. Failed to intervein when Lucretia Clay was dragged to the other side of the parking lot, by fellow officers, while disregarding her verbally communicating her inability to walk;

m. Failed to intervein when Lucretia Clay was forced to the ground on her knees, by fellow officers after Lucretia Clay communicated that she could not bend her legs;

n. Failed to intervein when Lucretia Clay was going to be transported by the IMPD officer employed by Indianapolis Metropolitan Police Department who placed Lucretia Clay's person into the inmate transport vehicle and allowed Lucretia Clay to fall onto the floor due to inadequate help to secure her person on the bench and lack of safety belts —after Lucretia Clay had communicated that she could not bend her legs and with the knowledge that Lucretia Clay's hands were cuffed behind her back and her feet were shackled together preventing her from moving;

o. Battered Lucretia Clay in the presence of DC, HM III, and HM, causing a strain on Lucretia Clay's immediate mental health; and

p. Failed to intervene when Officer Thorup restrained DC, HM III, and HM when they were to be released to Kathleen Clay (Maiden Name), causing a strain on Lucretia Clay's immediate mental health

vii. **All Lawrence Police Officers at the scene neglected their duty to Lucretia Clay when they:**

a. Failed to read Lucretia Clay her memorandum rights at the time of arrest;

b. Allowed Lucretia Clay to be dragged to the other side of the parking lot while disregarding her verbally communicating her inability to walk;

c. Allowed Lucretia Clay to be forced to the ground on her knees, after Lucretia Clay communicated that she could not bend her legs and/or forced Lucretia Clay to the ground on her knees after Lucretia Clay communicated that she could not bend her legs;

d. Allowed Khalid Brooks to force the patrol vehicle door closed on Lucretia Clay's body and head while Lucretia Clay lay in the police car, due to injuries to her spine and back from being tased;

e. Allowed Khalid Brooks to mentally antagonize Lucretia Clay regarding the welfare of her children, while it was noticeable that Lucretia Clay was in a sensitive mental state and traumatized by the happening events;

f. Allowed Andrew Thorup to falsify his police report, pertaining to the events that took place, without coming forward and correcting the false allegations;

g. Failed to intervene when fellow officers dragged Lucretia Clay to the other side of the parking lot, while disregarding her verbally communicating her inability to walk;

h. Failed to intervene when fellow officers forced Lucretia Clay to the ground on her knees, after  Lucretia Clay communicated that she could not bend her legs, by pushing down on Lucretia Clay's shoulders and head—causing Lucretia Clay's tailbone to hit the pavement;

i.   Failed to intervein when Khalid Brooks forced the patrol vehicle door closed onto Lucretia Clay's body and head, while Lucretia Clay lay in the police car due to injuries to her spine and back from being tased;

j.   Failed to intervein when Khalid Brooks was mentally antagonizing Lucretia Clay regarding the welfare of her children, while it was noticeable that Lucretia Clay was in a sensitive mental state and traumatized by the happening events;

k.   Failed to intervein when Lucretia Clay was going to be transported by the IMPD officer employed by Indianapolis Metropolitan Police Department, who placed Lucretia Clay's person into the inmate transport vehicle and allowed Lucretia Clay to fall onto the floor due to inadequate help to secure her person on the bench and lack of safety belts —after Lucretia Clay had communicated that she could not bend her legs and with the knowledge that Lucretia Clay's hands were cuffed behind her back and her feet were shackled together preventing her from moving;

l.   Battered Lucretia Clay in the presence of DC, HM III, and HM;

m.   Failed to intervene when officers battered Lucretia Clay in the presence of DC, HM III, and HM, causing a strain on Lucretia Clay's immediate mental health; and

n.   Failed to intervene when officers restrained DC, HM III, and HM when they were to be released to Kathleen Clay (Maiden Name), causing a strain on Lucretia Clay's immediate mental health

viii.   **Axon neglected it's duty to Lucretia Clay when it :**

a. Failed to install verbal warning messages prior to the deploying of a taser despite its knowledge that a taser can be considered and or used as a weapon;

b. Failed to install verbal warning messages prior to the deploying of a taser despite its knowledge of past incidents of tortious and criminal acts by officers against citizens; and

c. Failed to install verbal warning messages prior to the deploying of a taser despite its knowledge that officers are instructed to warn civilians prior deploying a taser.

II.    **FALSE IMPRISONEMENT, FALSE ARREST, AND/OR CRIMINAL CONFINEMENT** See: STATEMENTS OF FACTS (1-69 and 70-77)

i. **The City of Indianapolis in Marion County falsely imprisoned, falsely arrested, and/or criminally confined Lucretia Clay when it:**

a. Allowed the transport of Lucretia Clay's person in it's inmate transport vehicle;

b. Unlawfully imprisoned Lucretia Clay based on hearsay, without conducting it's own investigation of events—prior to accepting responsibility of Lucretia Clay's person, as a prisoner in the Indianapolis Metropolitan Police Department's transport vehicle and processing center at 675 Justice Way Indianapolis Indiana, 46203;

c. Unlawfully took and stored Lucretia Clay's DNA (against her will), as a condition for her to be released on bond—in violation of Lucretia Clay's religious beliefs and freedom of religious expression, also in violation of Lucretia Clay's First Amendment Right.;

d.  Detained Lucretia Clay  and held her hostage, based on hearsay, for over 12 hours and demanded a  $500.00 ransom for the release of her person.

ii.  **Officer Andrew Thorup falsely imprisoned, falsely arrested, and/or criminally confined Lucretia Clay when he :**

a.  Physically assaulted Lucretia Clay jumped her and forced his body weight onto Lucretia Clay from behind, and forced her into fetal position—directly resulting in preventing her from moving and confining her hands into a position that would not allow her to comply with his demand to "Give Me Your Hands";

b.  Failed to read Lucretia Clay her memorandum rights at the time of arrest;

c.  Failed to properly place Lucretia Clay under arrest;

d.  Placed handcuffs on Lucretia Clay's wrists and allowed shackles to be placed on her feet; and

e.  Handed Lucretia Clay's confined person over to the Indianapolis Metropolitan Police Department against Lucretia Clay's will.

iii.  **Khalid falsely imprisoned, falsely arrested, and/or criminally confined Lucretia Clay when he:**

a.  Physically assaulted Lucretia Clay, jumped her, and forced his body weight onto Lucretia Clay from behind, forced her into fetal position—directly resulting in preventing her from moving and confining her hands into a position that would not allow her to comply with his demand to "Give Me Your Hands";

b.  Failed to read Lucretia Clay her memorandum rights at the time of arrest;

c.  Failed to properly arrest Lucretia Clay;

d.  Placed handcuffs on Lucretia Clay's wrists and allowed shackles to be placed on her feet;

e.  Allowed Lucretia Clay to be forced to the ground on her knees, after Lucretia Clay communicated that she could not bend her legs;

f.  Detained Lucretia Clay's person in the back of his transport vehicle with her hands were cuffed behind her back and her feet shackled;

g.  Physically assaulted Lucretia Clay, by jumping her, forcing his body weight onto Lucretia Clay from behind, and forcing her into fetal position—directly resulting in preventing her from moving and confining her hands into a position that would not allow her to comply with his demand to "Give Me Your Hands";

h.  Failing to read Lucretia Clay her memorandum rights at the time of arrest;

i.  Allowed Lucretia Clay to be dragged to the other side of the parking lot, while disregarding her verbally communicating her inability to walk;

j.  Allowed Lucretia Clay to be forced to the ground on her knees, after Lucretia Clay communicated that she could not bend her legs;

k.  Confined Lucretia Clay's person to his police car, as he forced the patrol vehicle door closed on Lucretia Clay's body and head;

l.  Confining Lucretia Clay's person to his police car, and mentally antagonized Lucretia Clay regarding the welfare of her children while it was noticeable that Lucretia Clay was in a sensitive mental state and traumatized by the happening events;

m.  Handed Lucretia Clay's confined person over to the Indianapolis Metropolitan Police Department against Lucretia Clay's will.

iv. **All Lawrence police officers at the scene falsely imprisoned, falsely arrested, and/or criminally confined Lucretia Clay when they:**

    a.  Failed to request Lucretia Clay's identification during introduction;

    b.  Failed to read Lucretia Clay her memorandum rights at the time of arrest;

    c.  Failed to properly arrest Lucretia Clay;

    d.  Placed handcuffs on Lucretia Clay's wrists and allowed shackles to be placed on her feet;

    e.  Allowed Lucretia Clay to be dragged and/ or dragged Lucretia Clay's person to the other side of the parking lot, while disregarding her verbally communicating her inability to walk;

    f.  Forced Lucretia Clay to the ground on her knees, after Lucretia Clay communicated that she could not bend her legs; and

    g.  Handed Lucretia Clay's confined person over to the Indianapolis Metropolitan Police Department, against Lucretia Clay's will.

III.   **<u>INFLICTION OF EMOTIONAL DITRESS</u>**  <u>See: STATEMENTS OF FACTS (1-69 and 70-77)</u>

  i.  **The State of Indiana inflicted emotional distress on Lucretia Clay's person when it:**

    a.    Appointed a public defender to Lucretia Clay's case, who showed an unusually high level of bias when Lucretia Clay considered proceeding in her criminal case pro se, resulting in Lucretia Clay becoming emotionally damaged; and

    b.    Failed to screen the State appointed public defender appointed to Lucretia Clay's case, resulting in Lucretia Clay becoming emotionally damaged

ii. **The City of Lawrence intentionally inflicted emotional distress on Lucretia Clays's person by:**

    a.      Delaying Lucretia Clay's access to public records;

iii. **Andrew Thorup intentionally inflicted emotional distress on Lucretia Clay's person when he:**

    a.  Threatened Lucretia Clay by using offensive body language and position as a public servant;

    b.  Physically assaulted Lucretia Clay by jumping her and forcing his body weight onto Lucretia Clay from behind and forcing her into fetal position directly resulting in preventing her from moving and confining her hands into a position that would not allow her to comply with his demand to "Give Me Your Hands";

    c.  Tased Lucretia Clay from behind without warning;

    d.  Allowed Lucretia Clay to be dragged to the other side of the parking lot, while disregarding her verbally communicating her inability to walk;

    e.  Withheld Lucretia Clay's children from being released into the care of Kathleen Clay (maiden name);

    f.  Allowed Lucretia Clay to be forced to the ground on her knees, after Lucretia Clay communicated that she could not bend her legs, causing Lucretia Clay to hit her tailbone on the pavement;

    g.  Falsified his police report, pertaining to the events that took place, causing Lucretia Clay to have to endure court proceedings relating to child endangerment and other charges that lingered over Lucretia Clay's life.

h. Battered Lucretia Clay in the presence of DC, HM III, and HM, causing a strain on Lucretia Clay's immediate mental health; and

i. Restrained DC, HM III, and HM when they were to be released to Kathleen Clay (Maiden Name), causing a strain on Lucretia Clay's immediate mental health

iii. **Khalid Brooks intentionally inflicted emotional distress on Lucretia Clay's person when he:**

a. Threatened Lucretia Clay by using offensive body language and position as a public servant;

b. Physically assaulted Lucretia Clay by jumping her, forcing his body weight onto Lucretia Clay from behind and forcing her into fetal position—directly resulting in preventing her from moving and confining her hands into a position that would not allow her to comply with his demand to "Give Me Your Hands";

c. Allowed Lucretia Clay to be dragged to the other side of the parking lot, while disregarding her verbally communicating her inability to walk;

d. Allowed Lucretia Clay to be forced to the ground on her knees, after Lucretia Clay communicated that she could not bend her legs;

e. Forced the patrol vehicle door closed on Lucretia Clay's body and head, while Lucretia clay lay in the police car due to injuries to her spine and back from being tased;

f. Mentally antagonized Lucretia Clay regarding the welfare of her children, while it was noticeable that Lucretia Clay was in a sensitive mental state and traumatized by the happening events; and

g.  Allowed officer Andrew Thorup to falsify his police report pertaining to the events that took place without coming forward and correcting the false allegations.

h.  Battered Lucretia Clay in the presence of DC, HM III, and HM, causing a strain on Lucretia Clay's immediate mental health; and

i.  Failed to intervene when Officer Thorup restrained DC, HM III, and HM when they were to be released to Kathleen Clay (Maiden Name), causing a strain on Lucretia Clay's immediate mental health

iv.  **All Lawrence Police Officers at the scene intentionally inflicted emotional distress on Lucretia Clay's person when they:**

a.  Allowed Lucretia Clay to be dragged and/ or dragged Lucretia Clay to the other side of the Jiffy Lube parking, lot while disregarding her verbally communicating her inability to walk;

b.  Allowed  Lucretia Clay's children to be withheld and/ or withheld Lucretia Clay's children from being released into the care of  Kathleen Clay (maiden name), causing a strain on Lucretia Clay's immediate mental health;

c.  Allowed Lucretia Clay to be forced and/ or forced Lucretia Clay to the ground on her knees, after Lucretia Clay communicated that she could not bend her legs causing Lucretia Clay to hit her tailbone on the pavement.

d.  Battered Lucretia Clay in the presence of DC, HM III, and HM, causing a strain on Lucretia Clay's immediate mental health; and

e.  Failed to intervene when Officer Thorup restrained DC, HM III, and HM when they were to be released to Kathleen Clay (Maiden Name), causing a strain on

Lucretia Clay's immediate mental health

IV.      **ILLEGAL AND UNRESONABLE SEARCH AND SEIZURE** See: STATEMENTS OF FACTS (1-69 and 70-77)

i.)      **Lawrence Police Department illegally and unreasonably searched and seized Lucretia Clay's property when:**

   a.   Lawrence Police Department ordered Lucretia Clay's car to be towed without just cause;

   b.   Lawrence Police Department Towed Lucretia Clay's car, although there were multiple people with a license available to take responsibility for Lucretia Clay's car—to avoid tow fees and other hassles to Lucretia Clay's financial situation.

ii.      **Lawrence Police Department illegally and unreasonably searched and seized Lucretia Clay's person when:**

   a.   Lawrence Police Department arrested Lucretia Clay's person without probable cause.

iii.      **Indianapolis Metropolitan Police Department illegally and unreasonably searched and seized Lucretia Clay's person when:**

   a.   Indianapolis Metropolitan Police Department seized Lucretia Clay's person without conducting its own investigation of events prior to accepting responsibility of

Lucretia Clay's Person as a prisoner in the Indianapolis Police Department's transport vehicle and processing center at 675 Justice Way, Indianapolis, IN, 46203; and

b. Unlawfully collected and stored Lucretia Clay's DNA in it's database (against her will) as a condition for her to be released on bond—in violation of Lucretia Clay's religious beliefs and freedom of religious expression, also in violation of Clay's First Amendment Right.

iv. **Andrew Thorup illegally and unreasonably searched and seized Lucretia Clay's property when he :**

    a. Ordered for Lucretia Clay's car to be towed without just cause;

    b. Towed Lucretia Clay's car, although there were multiple people with a license available to take responsibility for Clay's car to avoid tow fees and other hassles to Lucretia Clay's financial situation

    c. Searched Lucretia Clay's car for identification, although Lucretia Clay repeatedly told officers that they did not have permission to search her car

v. **Andrew Thorup illegally and unreasonably searched and seized Lucretia Clay's person when he :**

    a. Jumped Lucretia Clay's forcing his body weight onto Lucretia Clay from behind and forcing her into fetal position—directly resulting in preventing her from moving and confining her hands into a position that would not allow her to comply with his demand to "Give Me Your Hands;

    b. Tased Lucretia Clay's person with no means for her to escape the harm; and

     c.   Arrested Lucretia Clay's person without probable cause.

    **vi.**    **Khalid Brooks illegally and unreasonably searched and seized Lucretia Clay's person when he :**

    a.   Jumped Lucretia Clay's forcing his body weight onto Lucretia Clay from behind and forcing her into fetal position—directly resulting in preventing her from moving and confining her hands into a position that would not allow her to comply with his demand to "Give Me Your Hands"

    b.   Cuffed Lucretia Clay's person without probable cause;

    c.   Forced Lucretia Clay to remain in his transport vehicle until the Indianapolis Metropolitan Police Department Transport vehicle arrived

  **vii.**    **All Lawrence Police Department officers at the scene illegally and unreasonably searched and seized Lucretia Clay's person when they:**

    a.   Forcefully dragged Lucretia Clay to the other side of the parking lot, against her will, while disregarding her verbally communicating about her inability to walk;

    b.   Forced Lucretia Clay to the ground on her knees after Lucretia Clay communicated that she could not bend her legs by pushing down on Lucretia Clay's shoulders and head—causing clay's tailbone to hit the pavement;

**V.**  **ASSALT AND BATTERY (verbal abuse)**  See: **STATEMENTS OF FACTS (1-69 and 70-77)**

    **i.**    **Andrew Thorup battered and assaulted (and/or) acted as an accessory to battery and assault to  Lucretia Clay's person when he:**

a. Threatened Lucretia Clay by using offensive body language and position as a public servant to unlawfully and aggressively invade Lucretia Clay and her children's personal space in a manner that made Lucretia Clay fear for the safety of her and her children;

b. Physically assaulted Lucretia Clay by jumping her and forcing his body weight onto Lucretia Clay from behind and forcing her into fetal position directly resulting in preventing her from moving and confining her hands into a position that would not allow her to comply with his demand to "Give Me Your Hands";

c. Tased Lucretia Clay from behind without warning;

d. Allowed Clay to be dragged and/or dragged Lucretia Clay to the other side of the parking lot while disregarding her verbally communicating her inability to walk;

e. Allowed Clay to be forced and/or forced Lucretia Clay to the ground on her knees after Lucretia Clay communicated that she could not bend her legs by pushing down on Lucretia Clay's shoulders and head—causing Lucretia Clay's tailbone to hit the pavement;

f. Allowed Khalid Brooks to force the patrol vehicle door closed on Lucretia Clay's body and head while Lucretia Clay lay in the police car due to injuries to her spine and back from being tased; and

g. Allowed Khalid Brooks to mentally antagonized Lucretia Clay regarding the welfare of her children while it was noticeable that Lucretia Clay was in a sensitive mental state and traumatized by the happening events.

ii. **Khalid Brooks battered and assaulted (and/ or) acted as an accessory to the battery and assault of Lucretia Clay's person when he:**

a. Threatened Lucretia Clay by using offensive body language and position as a public servant to unlawfully and aggressively invade Lucretia Clay and her children's personal space in a manner that made Lucretia Clay fear for the safety of her and her children; B. Physically assaulted Lucretia Clay by jumping her and forcing his body weight onto Lucretia Clay from behind and forcing her into fetal position directly resulting in preventing her from moving and confining her hands into a position that would not allow her to comply with his demand to "Give Me Your Hands";

b. Allowed Andrew Thorup to tase Lucretia Clay from behind without warning;

c. Forced the patrol vehicle door closed on Lucretia Clay's body and head while Lucretia Clay lay in the police car due to injuries to her spine and back from being tased;

d. Mentally antagonized Lucretia Clay regarding the welfare of her children, while it was noticeable that Lucretia Clay was in a sensitive mental state and traumatized by the happening events; and

e. Allowed the Indianapolis Metropolitan police Department Inmate Transport officer to place Lucretia Clay's person into the transport vehicle and allow Lucretia Clay to fall onto the floor and required her to stay in that position for the entire ride due to inadequate help to secure her person on the bench and lack of safety belts — after Lucretia Clay had communicated that she could not bend her legs and with the knowledge that Lucretia Clay's hands were cuffed behind her back and her feet were shackled together preventing her from moving.

iii. **All Lawrence Police Officers at the scene battered and assaulted (and/ or) acted as an accessory to the battery and assault of Lucretia Clay's person when they:**

a. Allowed Clay to be dragged and/or dragged Lucretia Clay to the other side of the parking lot while disregarding her verbally communicating her inability to walk;

b. Allowed Lucretia Clay to be forced and/or forced Lucretia Clay to the ground on her knees after Lucretia Clay communicated that she could not bend her legs by pushing down on Lucretia Clay's shoulders and head—causing clay's tailbone to hit the pavement;

c. Allowed Khalid Brooks to force the patrol vehicle door closed on Lucretia Clay's body and head while Lucretia Clay lay in the police car due to injuries to her spine and back from being tased;

d. Allowed officer Brooks to mentally antagonized clay regarding the welfare of her children while it was noticeable that Lucretia Clay was in a sensitive mental state and traumatized by the happening events; and

e. Allowed the Indianapolis Metropolitan police Department Inmate Transport officer to Place Lucretia Clay's person into the transport vehicle and allow Lucretia Clay to fall onto the floor and required her to stay in that position for the entire ride due to inadequate help to secure her person on the bench and lack of safety belts — after Lucretia Clay had communicated that she could not bend her legs and with the knowledge that Lucretia Clay's hands were cuffed behind her back and her feet were shackled together preventing her from moving.

iv. **Axon acted as an accessory to the battery and assault of Lucretia Clay's person when it :**

   a. Failed to install verbal warning messages prior to the deploying of a taser despite its knowledge that a taser can be considered and or used as a weapon;

   b. Failed to install verbal warning messages prior to the deploying of a taser despite its knowledge of past incidents of tortious and criminal acts by officers against citizens;

   c. Failed to install verbal warning messages prior to the deploying of a taser despite its knowledge that officers are instructed to warn civilians prior deploying a taser.

VI.    **<u>USE OF EXCESSIVE FORCE</u>** <u>See: STATEMENTS OF FACTS (1-69 and 70-77)</u>

  i. **Andrew Thorup used excessive force against Lucretia Clay's person when he:**

   a. Physically assaulted Lucretia Clay by jumping her and forcing his body weight onto Lucretia Clay from behind and forcing her into fetal position directly resulting in preventing her from moving and confining her hands into a position that would not allow her to comply with his demand to "Give Me Your Hands"; and

   b. Tased Lucretia. Clay from behind without warning.

  ii. **Khalid Brooks used excessive force against Lucretia Clay's person when he:**

   a. Physically assaulted Lucretia Clay by jumping her and forcing his body weight onto Lucretia Clay from behind and forcing her into fetal position directly resulting in preventing her from moving and confining her hands into a position that would not allow her to comply with his demand to "Give Me Your Hands"; and

b. Forced his patrol vehicle door closed Lucretia Clay's body and head while she lay in the police car due to injuries to her spine and back from being tased;

iii. **All Lawrence Police Officers at the scene used excessive force against Lucretia Clay's person when they:**

a. Dragged Lucretia Clay to the other side of the parking lot while disregarding her verbally communicating her inability to walk

b. Forced Lucretia Clay to the ground on her knees after Lucretia Clay communicated that she could not bend her legs by pushing down on Lucretia Clay's shoulders and head—causing Lucretia Clay's tailbone to hit the pavement.

VII.    **DEFAMATION** See: STATEMENTS OF FACTS (1-69 and 70-77

i.        **The state of Indiana defamed Lucretia Clay when it:**

a. Allowed documentation to be submitted to a public server that implied that Lucretia Clay was a criminal and involved in a criminal matter that referred to her ability to care for children—directly effecting her line of work , living environment, mental state, trust of police, happiness, and put her in direct fear of her safety for years to come; and

b. Allowed documentation to be submitted to a public server that implied that Lucretia Clay was a criminal and involved in a criminal matter that associated her

to be violent and a threat to police—directly effecting her line of work, living environment, mental state, trust of police, happiness, and put her in direct fear of her safety for years to come.

ii. **The city of Indianapolis defamed Lucretia Clay when it:**

a. Allowed documentation to be submitted to a public server that implied that Lucretia Clay was a criminal and involved in a criminal matter that referred to her ability to care for children—directly effecting her line of work , living environment, mental state, trust of police, happiness, and put her in direct fear of her safety for years to come; and

b. Allowed documentation to be submitted to a public server that implied that Lucretia Clay was a criminal and involved in a criminal matter that associated her to be violent and a threat to police—directly effecting her line of work, living environment, mental state, trust of police, happiness, and put her in direct fear of her safety for years to come.

iii. **The City of Lawrence and the Lawrence police department defamed Lucretia Clay when it:**

a. Appointed an attorney over it's public records dealings, who defamed Lucretia Clay, through writing (libel); resulting in the delay of Lucretia Clay accessing public records relating to this case;

b. Allowed documentation to be submitted to a public server that implied that Lucretia Clay was a criminal and involved in a criminal matter that referred to her ability to care for children—directly effecting her line of work , living

environment, mental state, trust of police, happiness, and put her in direct fear of her safety for years to come; and

c.  Allowed documentation to be submitted to a public server that implied that Lucretia Clay was a criminal and involved in a criminal matter that associated her to be violent and a threat to police—directly effecting her line of work, living environment, mental state, trust of police, happiness, and put her in direct fear of her safety for years to come.

iv.  **The city of Indianapolis and the Indianapolis Metropolitan police department defamed Lucretia's person when it:**

a.  Allowed documentation to be falsely submitted to a public server that implied that Lucretia Clay was a criminal and involved in a criminal matter that referred to her ability to care for children—directly effecting her line of work , living environment, mental state, trust of police, happiness, and put her in direct fear of her safety for years to come;

b.  Allowed documentation to be falsely submitted to a public server that implied that Lucretia Clay was a criminal and involved in a criminal matter that associated her to be violent and a threat to police—directly effecting her line of work, living environment, mental state, trust of police, happiness, and put her in direct fear of her safety for years to come.

v.  **Andrew Thorup Defamed Lucretia Clay's Person when he:**

a.  Falsely submitted documentation to a public server that implied that Lucretia Clay was a criminal and involved in a criminal matter that referred to her ability to care for children—directly effecting her line of work , living environment, mental state, trust of police, happiness, and put her in direct fear of her safety for years to come; and

b.  Falsely submitted documentation to a public server that implied that Lucretia Clay was a criminal and involved in a criminal matter that associated her to be violent and a threat to police—directly effecting her line of work, living environment, mental state, trust of police, happiness, and put her in direct fear of her safety for years to come.

vii.  **Khalid Brooks Defamed Lucretia Clay's person when he:**

a.  Allowed documentation to be falsely submitted to a public server that implied that Lucretia Clay was a criminal and involved in a criminal matter that referred to her ability to care for children—directly effecting her line of work , living environment, mental state, trust of police, happiness, and put her in direct fear of her safety for years to come;

b.  Allowed documentation to be falsely submitted to a public server that implied that Lucretia Clay was a criminal and involved in a criminal matter that associated her to be violent and a threat to police—directly effecting her line of work, living environment, mental state, trust of police, happiness, and put her in direct fear of her safety for years to come.

VIII.  **OBSTRUCTION OF JUSTICE** See: STATEMENTS OF FACTS (1-69 and 70-77)

**i. Andrew Thorup obstructed justice towards Lucretia Clay's Person when he:**

a.  Falsely submitted documentation to a public server that implied that Lucretia Clay was a criminal and involved in a criminal matter that referred to her ability to care for children—directly effecting her line of work , living environment, mental state, trust of police, happiness, and put her in direct fear of her safety for years to come; and

b.  Falsely submitted documentation to a public server that implied that Lucretia Clay was a criminal and involved in a criminal matter that associated her to be violent and a threat to police—directly effecting her line of work, living environment, mental state, trust of police, happiness, and put her in direct fear of her safety for years to come

**ii. Khalid Brooks obstructed justice towards Lucretia Clay's person when he:**

a.  Allowed documentation to be falsely submitted to a public server that implied that Lucretia Clay was a criminal and involved in a criminal matter that referred to her ability to care for children—directly effecting her line of work , living environment, mental state, trust of police, happiness, and put her in direct fear of her safety for years to come; and

b.  Allowed documentation to be falsely submitted to a public server that implied that Lucretia Clay was a criminal and involved in a criminal matter that associated her to be violent and a threat to police—directly effecting her line of work, living environment, mental state, trust of police, happiness, and put her in direct fear of her safety for years to come.

## STATEMENT OF FACTS CONTINUED

70.)    Plaintiff, Lucretia Clay, as a result of this incident caused by Defendants, suffered damages including but not limited to: Extreme emotional distress, mental anguish, psychological trauma, anxiety, pain, and suffering, and/ or other forms of losses or costs.

71.)    The Plaintiff's injuries were directly and proximately caused by the carelessness, negligence, false imprisonment, intentional infliction of emotional distress, illegal and unreasonable search and seizure, assault and battery, use of excessive force, defamation, and obstruction of justice on the part of Defendants mentioned in this complaint. . These failings are mentioned throughout this document but are not limited to the circumstances provided in this document.

72.)    The acts and/ or omissions of the Defendants violated Indiana law and were without a valid legal excuse or justification.

73.)    As a direct and proximate result of carelessness, negligence, false imprisonment, intentional infliction of emotional distress, illegal and unreasonable search and seizure, assault and battery, use of excessive force, defamation, and obstruction of justice of the Defendants, the Plaintiff, Lucretia Clay sustained extreme emotional distress and mental anguish which resulted in stress, anxiety, depression, sadness and may require psychological therapy

74.)    As a direct and approximate result of carelessness, negligence, false

imprisonment, intentional infliction of emotional distress, illegal and unreasonable search and seizure, assault and battery, use of excessive force, defamation, malicious prosecution, and obstruction of justice, of the Defendants, the Plaintiff, Lucretia Clay, is entitled to recover all forms of compensatory damages, both permanent and temporary in nature, as well as costs of all medical and/ or psychological treatment. To treat her injuries and lessen her pain and suffering, Plaintiff, Lucretia Clay,  has attempted to engage the services of healthcare providers/ therapists and may incur in the future additional reasonable medical/ psychological expenses for such treatment.

75.) As a direct result of carelessness, negligence, false imprisonment, intentional infliction of emotional distress, illegal and unreasonable search and seizure, assault and battery, use of excessive force, defamation, malicious prosecution, and obstruction of justice of the Defendants, the Plaintiff, Lucretia Clay, has been damaged.

76.) The prerequisites have been satisfied under the Indiana Tort Claim Act

77.) Alternatively, the actions of all Defendants, namely, Andrew Thorup, Khalid Brooks, The City of Lawrence, The City of Indianapolis, The State of Indiana, The Lawrence Police Department, The Indianapolis Metropolitan Police Department, Axon Enterprise Inc. ,and all other officers and EMT staff present on August 30, 2022, were directly and indirectly intentional in nature and

designed to inflict emotional distress and mental anguish entitling the Plaintiff,

Lucretia Clay ,to recover all forms of compensatory damages outlined above,

as well as exemplary damages

.

IX.       <u>**REQUEST FOR RELIEF**</u>

WHEREFORE, Plaintiffs, Lucretia Clay, by Pro se, individually prays that the

court grants judgment in her favor and against Defendants, named above in an

amount which will fully and fairly compensate her for all of her emotional

injuries, emotional pain and suffering, mental anguish, medical expenses, loss of

time, loss of enjoyment of life, loss of activities of daily living, loss of income,

and other losses  incurred, or which are reasonably expected to be incurred in the

future and all other forms of damages or losses, that may arise due to the above

mentioned incidents, for costs in bringing this action for prejudgment interest,

exemplary damages, and all other just and proper relief in the premises'.

**Dated: January 23, 2025**

**Lucretia Clay**
 **10242 John Jay St.**
 **Indianapolis IN, 46235**
 **P: 317- 732- 7597**
 **Pro Se as plaintiff**

Complaint Page: 49 OF 49

X.       **REQUEST FOR JURY BY TRIAL**

Comes now the Plaintiff, Lucretia Clay, by Pro se, on January 23 , 2025, and requests trial by

jury pursuant to Indiana Trial Rule 38.

> **Lucretia Clay**
>
> **January 23, 2025**
> **Pro Se for plaintiff**
> **P: 317-732-7597**
> **Write.Just.LuGal@gmail.com**

Complaint Page: 50 OF 49