fUNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LUCRETIA CLAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-00018-JPH-TAB |
| | ) | |
| ANDREW THORUP in his individual and official capacity, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON PENDING MOTIONS**

Plaintiff Lucretia Clay's omnibus motion [Filing No. 174] seeks wide-ranging relief. The Court previously took the omnibus motion under advisement to the extent it seeks sanctions for alleged fraud during discovery and denied all other relief sought. [Filing No. 190.] This order addresses the request for sanctions [Filing No. 174], as well as motions related to Clay's late and non-compliant reply brief in support of sanctions [Filing Nos. 197, 198, 206, and 207] and her latest request for a protective order [Filing No. 205]. For the reasons stated below, these motions are denied.

**I.    Request for sanctions [Filing No. 174]**

Clay invokes Fed. R. Civ. P. 37(e) and the Court's inherent authority and seeks sanctions in this matter involving allegations of constitutional violations and other torts stemming from an altercation with City of Lawrence police officers. [Filing No. 174.] Clay claims Defendants tampered with bodycam video produced in initial disclosures and asks the Court for terminating

1

sanctions and other relief.[1]  In opposing the motion, Defendants argue that Clay's motion is "procedurally defective, factually baseless, and legally insufficient, [and] based on nothing more than conjecture dressed up in forensic-sounding language."  [Filing No. 193, at ECF p. 15.] Ultimately, Clay's allegations of misrepresentations regarding discovery are undermined by her failure to issue proper discovery requests, and her allegations of fraud are speculative at best.

To start, Clay's claims of discovery violations lack merit because she confuses initial disclosures and requests for production.  [Filing No. 174, at ECF p. 2 ("Plaintiff served her Initial Disclosures, which explicitly requested 'unedited,' native footage of Body Worn and Dash Cameras for ALL officers present at the scene.").]  Initial disclosures—which resulted in the production of the video at issue—require the production of only those materials that a party "may use to support its claims or defenses[.]"  Fed. R. Civ. P. 26(A)(1).  The Federal Rules of Civil Procedure impose no obligation for parties to produce materials *in response* to initial disclosures. Therefore, Defendants' statements claiming discovery compliance are not fraudulent or otherwise lacking in candor as alleged by Clay.

Clay's other grounds for sanctions fare no better.  Clay must prove by a preponderance of evidence—not mere speculation—that she is entitled to sanctions.  *Ramirez v. T&H Lemont, Inc.,* 845 F.3d 772, 777 (7th Cir. 2016); *see also United States v. Stevenson*, 13 F.4th 607, 612-13 (7th Cir. 2021) ("[C]onjecture falls short of proof by a preponderance of the evidence.").  Sanctions under the Court's inherent authority require the moving party to show that another party "willfully abused the judicial process or otherwise conducted the litigation in bad faith." *See Ramirez*, 845 F.3d. at 776.  For terminating sanctions under Fed. R. Civ. P. 37(e), the moving

---

[1] Clay's motion is vague as to which Defendant allegedly altered the video and from which Defendants she seeks sanctions.  For the sake of simplicity, this order uses "Defendants" generally and only identifies specific Defendants as needed.

party must show that, in failing to preserve electronically stored information, a party "acted with the intent to deprive another party of the information's use in the litigation."  A terminating sanction—such as the default judgment sought by Clay—is a harsh penalty that should be used sparingly.  *See Dotson v. Bravo*, 321 F.3d 663, 667 (7th Cir. 2003).  As such, terminating sanctions require "a degree of culpability that exceeds simple inadvertence or mistake." *Ramirez*, 845 F.3d at 776.

Without citing any supporting authority or alleging special training or expertise in computer forensics or another relevant area, Clay claims the videos' lack of a manufacturer's timestamp and logo proves that Defendants produced "edited" and "forensically scrubbed" videos.  [Filing No. 174, at ECF p. 1.]  Clay's argument lacks a factual foundation.  In the omnibus motion, Clay argues that, if unedited, the videos should contain logos and timestamps from Defendant Axon Enterprise, Inc.  [Filing No. 174, at ECF p. 5-7.]  However, Defendants' response brief points out that while Axon made the TASER energy weapons used at the scene, it did not manufacture the cameras.  [Filing Nos. 193, at ECF p. 6; 193-1, at ECF p. 1.]  This leads Clay to argue in her reply brief—which is stricken for the reasons stated below—that the lack of non-party Utility, Inc.'s logo and timestamp is evidence of alteration.  [Filing No. 195, at ECF p. 5.]  The evolving nature of these explanations undermines the credibility of Clay's claims.

Moreover, the Court is not persuaded that the lack of timestamp or logo bears any relevance to the authenticity of the videos produced.  Such a conclusion would require more than Clay's speculation and the existence of unrelated videos containing logos, timestamps, or other overlays.  According to the affidavit of Travis Cline, deputy chief of operations for the City of Lawrence Police Department, LPD can export video from its evidence management system with or without various overlays, including timestamps, but "[t]he presence or absence of overlays

does not alter the underlying video content." [Filing No. 193-1, at ECF p. 3.] The selection of evidence export settings—which was completed sometime before LPD served its initial disclosure on July 11, 2025—is different than "editing" or "forensically scrubbing" the videos. Indeed, production of videos with timestamps, manufacturer's logos, or similar overlays could have led to complaints that those overlays obscured important video content. Clay has not proven improper conduct or intent.

With a similar absence of supporting evidence, Clay argues that: (1) the production of videos as MP4 (also known as MPEG-4) files "proves that the videos are not native" and "processed on a local workstation to intentionally bypass the forensic audit trail and circumvent the native metadata requirements;" and (2) the presence of non-video files ("WPSettings.dat" and "IndexerVolumeGuid") on the USB drive "confirm[] the lack of authenticity" of the videos. [Filing No 174, at ECF p. 5.] These claims—as well as others asserted by Clay—pertain to technical knowledge that is not readily accessible to laypersons or the Court. Without proper support, these claims are speculative and unpersuasive. Moreover, Defendants rebut Clay's arguments with the affidavit of Cline, who is familiar with the cameras and evidence management systems used and who stated that LPD routinely exports videos as MP4 files and the non-video files contained in the digital production are merely generated automatically by the Windows operating system. [Filing No. 193, at ECF p. 6-7; Filing No. 193-1.] Thus, Clay's claim that Defendants intentionally altered videos produced in initial disclosures is unsupported by evidence. Similarly, Clay's claim that officers on the scene conspired to stop recording around the same time is too speculative and unpersuasive.

The Court must evaluate Clay's allegation that Defendants failed to preserve two bodycam videos under Fed. R. Civ. P. 37(e), which authorizes sanctions for the failure to take

reasonable steps to preserve electronically stored information under certain circumstances. If the lost evidence cannot be restored or replaced through additional discovery and causes prejudice, the Court "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). However, severe sanctions, such as the default judgment sought by Clay, require proof that a party destroyed or lost evidence "with the intent to deprive another party of the information's use in the litigation." *See* Fed. R. Civ. P. 37(e)(2); *see also K & C Properties, Inc. v. State Auto Property & Casualty Ins. Co.*, No. 4:21-cv-39-TWP-DML, 2022 WL 22703757, at *6 (S.D. Ind. Sept. 19, 2022) ("In the Seventh Circuit, a sanction based on the spoliation of potential evidence requires the same two showings described in Rule 37(e)(2): (1) the party had a duty to preserve the evidence because it knew or should have known that litigation was imminent and (2) the party acted in bad faith in destroying the information, having done so for the purpose of hiding adverse information." (internal quotations and citations omitted)).

Even assuming Defendants failed to take reasonable steps to preserve two videos, Clay has not shown prejudice or improper intent. Defendants produced videos from multiple vehicles and officers at the scene. Their failure to preserve a video from an additional officer at the scene and another video pertaining to a prior encounter between Clay and an LPD officer appears to have been inadvertent and does not amount to spoliation of evidence or otherwise warrant sanctions. Defendants produced video from Defendants Andrew Thorup and Khalid Brooks and four[2] non-party officers present at the scene of the underlying incident. [Filing No. 193, at ECF p. 7-8.] Defendants acknowledge that the bodycam video from one non-party officer, Brandon

---

[2] Defendants also produced bodycam video from a fifth non-party officer—Justin Rossillo. However, that video was associated with the underlying incident in error and does not capture relevant events. [Filing No. 193, at ECF p. 10.] Contrary to Clay's arguments, the Court finds no misconduct in the production of this video.

Raftery, was deleted.  Defendants state that the video was "inadvertently not included in the video collection exported to counsel in February 2024" and then deleted two years after the incident in accordance with LPD's retention policy.  [Filing No. 193, at ECF p. 11-12.]  However, Clay does not argue that the scene videos produced failed to capture the use-of-force incident or that non-party Raftery's bodycam had a superior vantage point.  While potentially relevant, Raftery's bodycam video can fairly be categorized as redundant.

Defendants also acknowledge that they did not preserve video from Defendant Andrew Thorup regarding the initial encounter with Clay.  [Filing No. 193, at ECF p. 12.]  On the day of the subject altercation, Thorup first encountered Clay when she was stopped in a church parking lot with a flat tire, and a short time later when she was in the parking lot of a Jiffy Lube.  [Filing No. 130, at ECF p. 4-5.]  Defendants state that the video of the initial encounter was "not marked as connected to the later use-of-force incident . . .  and thus was not retained" past the standard two-year retention period.  [Filing No. 193, at ECF p. 12.]  Thus, the loss of this video is unintentional.  Moreover, Clay has not argued that the first encounter had any special significance to her claims.  Finally, any alleged prejudice caused by the loss of this video may be mitigated by deposing Thorup.  In sum, Clay has not identified conduct warranting sanctions pursuant to Rule 37(e) or the Court's inherent authority.

## II.    Motions related to briefs on Clay's request for sanctions [Filing Nos. 197, 198, 206, and 207]

Clay filed motions asking the Court to excuse the lateness and excessive length of her reply brief in support of her omnibus motion.  [Filing Nos. 197, 198.]  Defendants do not object to the reply brief being one day late but do object to its length.  [Filing No. 204.]  Southern District of Indiana Local Rule 7-1(e) limits supporting and response briefs to 30 pages each and reply briefs to 15 pages.   Despite prior Court warnings, Clay's reply brief exceeds the page limit

by five pages.  [*See* Filing No. 190 (noting the omnibus motion's non-compliance with local rules regarding format and length); Filing No. 169 (noting the proposed fourth amended complaint's unwieldiness and non-compliance with format requirements).]  Unlike Clay's *reply* brief and contrary to the allegations in her motion to strike [Filing No. 207], Defendants' 17-page *response* brief complies with its applicable page limit.  Defendants' objection [Filing No. 204] to the length of the reply brief is proper and justified, and Clay's motion to strike [Filing No. 207] that objection is denied.

Furthermore, Clay impermissibly filed new evidence [Filing Nos. 199, 203] with her reply brief.  See *FosTecH v. Admiral Ins*. Co., 804 F.Supp. 3d 847, 852 (S.D. Ind. Sept. 24, 2025) ("[N]ew arguments and evidence may not be raised for the first time in a reply brief.  Reply briefs are for replying, not raising new arguments that could have been advanced in the opening brief." (quoting *Reis v. Robbins*, No. 14-cv-63, 2015 WL 846526, at *2 (S.D. Ind. Feb. 26, 2015))).  Given the recurrent violations of local rules, the Court denies Clay's motions seeking to excuse the non-compliance in her reply brief [Filing Nos. 197, 198] and strikes her reply [Filing No. 195] and its exhibits [Filing No. 199, 203].

Additionally, Clay's motion seeking leave to file an amended reply—filed over two weeks after the reply deadline—is denied.  [Filing No. 206.]

### III.    Clay's motion for protective order [Filing No. 205]

The Court previously granted a protective order requiring Clay's deposition to be conducted via video conference and with 10-minute breaks every hour.  [Filing No. 169.]  Clay now moves for a protective order related to her deposition, which Defendants convened on May 5, 2026.  [Filing No. 205.]  The Court is not aware of any present efforts to reconvene Clay's deposition.  The Court fails to see how an order could protect a party from further annoyance,

embarrassment, oppression, or undue burden or expense from a deposition that has already occurred.  Clay has not shown good cause for a protective order.

Clay asks the Court to bar use of any deposition testimony taken more than seven hours after the start of her deposition.  However, Clay does not explicitly state to what extent her deposition exceeded the durational limit for depositions.  The seven-hour durational limit is presumptive and can be extended by agreement or court order.  An inadvertent extension of a deposition beyond the durational limit has no effect on the use of such testimony.  Moreover, Clay's deposition may not have exceeded the limit.  The transcript excerpts Clay filed[3] suggest that Clay terminated the deposition after seven hours and ten minutes, which included a S.D. Ind. Local Rule 37-1 telephonic conference with the magistrate judge to address a discovery dispute. [Filing No. 205-1, at ECF p. 4.]  The durational limit "contemplates that there will be reasonable breaks during the day for lunch and other reasons, and that the only time to be counted is the time occupied by the actual deposition."  Fed. R. Civ. P. 30 advisory committee's note to 2000 amendment, subdiv. (d).  After accounting for breaks and the Local Rule 37-1 conference, the actual deposition likely lasted less than seven hours, and Clay may have terminated the deposition prematurely.

Additionally, Clay's various arguments related to testimony taken before the seven-hour mark are similarly without merit.  The transcript excerpts Clay filed [Filing No. 205-1] do not document any coercive or unprofessional behavior by defense counsel.  Nor do they document examination outside the scope of discovery.  It was not improper for counsel for LPD to ask

---

[3] The transcript excerpts [Filing No. 205-1] Clay filed in support of the requested protective order are out of order and contain duplicate excerpts.  Despite the jumbled format, the Court has done its best to interpret this evidence and must evaluate Clay's motion based on the information she provided.

questions on behalf of counsel for the City of Indianapolis, who did not attend the deposition. *See* Fed. R. Civ. P. 26(b)(1) (defining the scope of discovery as "any nonprivileged matter that is relevant to *any* party's claim or defense and proportional to the needs of the case" (italics added)). Contrary to Clay's arguments, there is no procedural or ethical rule preventing defense counsel from cooperating with or assisting one another in the defense of their respective clients. In fact, parties with common interests, such as defendants facing similar causes of action from the same plaintiff, often share information and assist one another and sometimes enter formal joint defense agreements.

Additionally, the transcript excerpts document no improper questions regarding Clay's minor children. The operative complaint alleges that the presence of the children at the scene of the underlying incident exacerbated the emotional distress for which Clay seeks damages. [Filing No. 130, at ECF p. 14 (alleging Defendants' actions "in the presence of her children[] caus[ed] immediate mental health strain" and that she was "[m]entally agonized . . . regarding her children's welfare while she was traumatized").] Thus, questions regarding video depicting the children at the scene are relevant. Similarly, deposition questions regarding the damages Clay seeks in this lawsuit are relevant and proper, even though Fed. R. Evid. 408 prohibits introducing settlement communications at trial.

Because Clay has not shown good cause, her motion for a protective order [Filing No. 205] is denied.

9

## IV.      Conclusion

Clay's omnibus motion, including its request for sanctions; her motions related to late and/or non-compliant replies; and her motion for a protective order [Filing Nos. 174, 197, 198, 205, 206, and 207] are denied in their entirety.  The Clerk is directed to strike the reply and its exhibits.  [Filing Nos. 195, 199, and 203.]

Date: 6/5/2026

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

LUCRETIA CLAY
10242 John Jay Drive
Indianapolis, IN 46235