UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LUCRETIA CLAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-00018-JPH-TAB |
| | ) | |
| ANDREW THORUP in his individual and | ) | |
| official capacity, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**

Lucretia Clay is pursuing civil-rights claims arising out of an altercation with City of Lawrence police officers and her subsequent arrest. The State of Indiana, City of Indianapolis, and Axon Enterprise have filed motions to dismiss the claims against them in Ms. Clay's third amended complaint. Dkt. [132]; dkt. [138]; dkt. [140]. For the reasons below, those motions are **GRANTED**.

**I.**
**Facts and Background**

Because Defendants have moved for dismissal under Rule 12(b)(6), the Court accepts and recites "the well-pleaded facts in the complaint as true." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

In August 2022, Ms. Clay was driving with her three children when her car got a flat tire. Dkt. 130 at 4 (third amended complaint). She first stopped in a church parking lot, where Lawrence Police Officer Andrew Thorup checked on her, and then left. *Id.* After attempting to air up the tire, Ms. Clay drove to

1

a nearby Jiffy Lube, where Officer Thorup pulled in behind her and started yelling at her about her car. *Id.* at 4–5. Ms. Clay walked back toward her car to be with her children. *Id.* at 5–6. Lawrence Police Officer Khalid Brooks then pulled into the parking lot, "joining Officer Thorup in his aggressive approach toward [Ms. Clay] and her vehicle." *Id.*

Officer Thorup yelled that Ms. Clay would be going to jail and then jumped on her from behind while telling her to give him her hands. *Id.* at 6. Ms. Clay could not move her hands because Officer Thorup was "forcing her into a fetal position," and Officer Thorup started yelling that she was resisting arrest. *Id.* Officer Thorup then tased her without warning. *Id.* Officer Brooks lifted Ms. Clay enough that she could free her hands, and handcuffed her. *Id.*

After Ms. Clay was handcuffed, her mother arrived and took care of the children. *Id.* at 7. Another officer transported Ms. Clay to the Marion County processing center, where "she was forced to give the State of Indiana a DNA swab against her will and religious beliefs" and was released on bond. *Id.* at 8. Ms. Clay was charged with resisting arrest, neglect of dependents, attempting to disarm an officer, and disorderly conduct. *Id.* at 7–8. Ms. Clay's court-appointed public defender was biased against her, telling her "that he 'did not like her kind.'" *Id.* at 9. The charges against her were later dropped. *Id.*

Ms. Clay brought this case in Indiana state court, and Defendants City of Lawrence, Officer Brooks, and Officer Thorup removed the case to this Court. Dkt. 1; *see* dkt. 52 (order denying Ms. Clay's motion to remand). In December 2025, Ms. Clay filed her third amended complaint against the City of Lawrence,

Lawrence Police Department, Officer Brooks, and Officer Thorup; unnamed City of Lawrence EMTs and police officers; the City of Indianapolis and Indianapolis Metropolitan Police Department ("IMPD"); an unnamed IMPD transport officer and unnamed jail employees; the State of Indiana; and Axon Enterprise, which manufactures TASER weapons. Dkt. 130 at 2–4. She alleges negligence; false imprisonment, false arrest, and/or criminal confinement; intentional infliction of emotional distress ("IIED"); unreasonable search and seizure; assault and battery; excessive force; defamation; obstruction of justice; violation of her religious beliefs; and a products liability claim. *Id.* at 11–28.

Defendants Axon Enterprise, the State of Indiana, and the City of Indianapolis and IMPD have filed motions to dismiss the claims against them. Dkt. 132; dkt. 138; dkt. 140.

## II.
## Rule 12(b)(6) Standard

Defendants may move under Federal Rule of Civil Procedure 12(b)(6) to dismiss claims for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A facially plausible claim is one that allows "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a complaint "must allege enough details about the subject-matter of the case to present a story

that holds together," *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021), "but it need not supply the specifics required at the summary judgment stage." *Graham v. Bd. of Educ.*, 8 F.4th 625, 627 (7th Cir. 2021).

When ruling on a 12(b)(6) motion, the Court "accept[s] the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley*, 671 F.3d at 616. "It is enough to plead a plausible claim, after which a plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017).

Indiana substantive law governs Ms. Clay's state-law claims. *See Webber v. Butner*, 923 F.3d 479, 480–81 (7th Cir. 2019). Absent a controlling decision from the Indiana Supreme Court, the Court does its best to predict how that court would rule on the issues of law. *Mashallah, Inc. v. West Bend Mut. Ins. Co.*, 20 F.4th 311, 319 (7th Cir. 2021). In doing so, the Court may consider decisions from the Indiana Court of Appeals. *See id.*

### III.
### Analysis

#### A. Axon's Motion to Dismiss

Ms. Clay brings claims against Axon—which manufactures TASER weapons—for negligence, IIED, assault and battery, and failure to warn under the Indiana Product Liability Act ("IPLA"). Dkt. 130 at 11–28.

### 1. Negligence and failure to warn

Ms. Clay's negligence and failure-to-warn claims allege that Axon failed to provide warnings, including "integrated audible warnings, to mitigate the risks associated with rapid or unannounced deployment of the TASER device." Dkt. 130 at 15–16, 27–28.[1]  Axon argues that these claims must be dismissed because Ms. Clay "does not allege a specific latent danger in the use of an energy weapon necessitating a warning."  Dkt. 141 at 7.  Ms. Clay responds that the TASER weapon's ability "to deliver high-voltage electricity into a human spine" requires a warning "from the device itself" to allow her to comply with orders or brace herself.  Dkt. 178 at 1–2.

A manufacturer may be liable under Indiana law for failing "to warn of a danger . . . as to which the average consumer would not be aware."  *Ford Motor Co. v. Rushford*, 868 N.E.2d 806, 810 (Ind. 2007).  But a TASER weapon's capabilities are an obvious and inherent danger of the weapon, rather than a "latent dangerous characteristic" that triggers a duty to warn.  *Kaiser v. Johnson & Johnson*, 947 F.3d 996, 1015 (7th Cir. 2020) (applying *Nat. Gas Odorizing, Inc. v. Downs*, 685 N.E.2d 155, 161 (Ind. Ct. App. 1997)); *First Nat'l Bank & Tr. Corp. v. Am. Eurocopter Corp.*, 378 F.3d 682, 690 (7th Cir. 2004)

---

[1] The parties have not addressed whether Ms. Clay is a "user or consumer" of the TASER weapon under Ind. Code § 34-20-1-1, which would require all her claims against Axon to proceed under IPLA, *see Robinson v. Davol Inc.*, 913 F.3d 690, 693 (7th Cir. 2019); *Stegemoller v. ACandS, Inc.*, 767 N.E.2d 974, 975 (Ind. 2002) (explaining that "consumer" includes "any bystander injured by the product who would reasonably be expected to be in the vicinity of the product during its reasonably expected use").  The Court does not address that question because these claims are subject to dismissal regardless of whether they are within IPLA's scope.  *See Ford Motor Co. v. Rushford*, 868 N.E.2d 806, 810 (Ind. 2007).

("There is no duty to warn that a knife or an ax will cut, a match will take fire, dynamite will explode, or a hammer may mash a finger.").

Ms. Clay nevertheless contends that the danger was hidden from her because the officers approached her from behind. Dkt. 178 at 1–2. But whether a danger is latent depends on what would be hidden from "the ordinary consumer," not from Ms. Clay in her own experience. *Am. Eurocopter*, 378 F.3d at 690. For example, the danger from a BB gun is not latent "under the objective test that Indiana uses," even if the specific plaintiffs were not aware of it. *Moss v. Crosman Corp.*, 136 F.3d 1169, 1174–75 (7th Cir. 1998); Ind. Code § 34-20-4-4 ("A product is not defective under the article if the product is incapable of being made safe for its reasonably expected use, when manufactured, sold, handled, and packaged properly."). Ms. Clay therefore has not pleaded a plausible claim against Axon based on a duty to warn. *See Welch v. Scripto–Tokai Corp.*, 651 N.E.2d 810, 816 (Ind. Ct. App. 1995) ("[T]he risks posed by a disposable butane lighter are open and obvious to an ordinary user of the lighter" so there was "no duty to warn.").

### 2. Assault and battery, and IIED

Axon argues that Ms. Clay's assault and battery and IIED claims must be dismissed because they both require intent, which Ms. Clay has not plausibly alleged. Dkt. 141 at 4–6. Ms. Clay responds that intent can be inferred from Axon's decision "to distribute a weapon capable of delivering 50,000 volts into a human spine." Dkt. 178 at 3.

6

To prevail on these claims, Ms. Clay must plausibly allege that Axon intended to harm her.  "[B]attery is an intentional tort and requires the intent to cause a harmful or offensive contact with the plaintiff." *Price v. Kuchaes*, 950 N.E.2d 1218, 1231 (Ind. Ct. App. 2011); *see Hellums v. Raber*, 853 N.E.2d 143, 147 (Ind. Ct. App. 2006) (explaining that an aiding and abetting theory requires "intent to commit a tort, or [ ] negligence").  Assault similarly "is effectuated when one acts intending to cause an imminent apprehension of a harmful or offensive contact with another person." *Raess v. Doescher*, 883 N.E.2d 790, 794 (Ind. 2008).  And IIED claims can proceed only "with the requisite intent or recklessness to cause . . . severe emotional distress." *Fox v. Franciscan Alliance, Inc.*, 204 N.E.3d 320, 329–30 (Ind. Ct. App. 2023).

Here, intended or reckless harm to Ms. Clay cannot be inferred from Axon's decision to make a product, even a weapon designed to contact another person.  *See Price*, 950 N.E.2d at 1231–32 (holding that a vaccine manufacturer could not have intended to harm the plaintiff).  So, Axon's decision to make TASER weapons does not support the inference that it intended harm to Ms. Clay in her interaction with Officers Thorup and Brooks. *See id.* ("The vaccine manufacturers could not have intended to cause any contact, let alone harmful contact, of the vaccine *with Cathy*." (emphasis added)); *cf. Baker v. Atlantic Richfield Co.*, No. 2:17-cv-429-JVB-JPK, 2021 WL 3726050 at *7 (N.D. Ind. Aug. 23, 2021) (holding that even if manufacturers of lead-containing products concealed contamination, plaintiffs did not plead

7

intent to harm them).  Ms. Clay therefore has not plausibly alleged that Axon intended to harm her as required for her assault and battery and IIED claims.

Ms. Clay's claims against Axon are **DISMISSED**.

### B. State of Indiana's Motion to Dismiss

Ms. Clay brings negligence, IIED, and defamation claims against the State of Indiana.  Dkt. 130 at 11–28.  She alleges that Indiana appointed her a biased public defender in her criminal case and published "public records" related to her criminal case that said she "was a criminal" and "was violent and a threat to police."  *Id.*

### 1. Negligence and IIED

The State of Indiana argues that Ms. Clay's negligence and IIED claims are barred by absolute immunity because they are based on her public defender appointment, which is a judicial act.  Dkt. 133 at 5–6; dkt. 182 at 1.  Ms. Clay responds, without supporting authority, that the public-defender appointment was an administrative act rather than a judicial one.  Dkt. 177 at 2.

Under Indiana law, "absolute judicial immunity" applies to judges and non-judicial officers "who perform quasi-judicial functions."  *Marion Sup. Ct. Prob. Dept. v. Trapuzzano*, 223 N.E.3d 282, 288 (Ind. Ct. App. 2023).  This immunity "applies even if the action the defendant took was in error, was done maliciously, or was in excess of his authority."  *Ind. Bd. of Pharm. v. Elmer*, 207 N.E.3d 1237, 1241 (Ind. Ct. App. 2023).

8

That immunity applies here because a public defender's appointment is a judicial act.  *See* Ind. Code § 35-33-7-6; *Johnson v. State,* 640 N.E.2d 747, 749 (Ind. Ct. App. 1994) ("It is a judicial function to determine whether counsel shall be appointed at public expense."); *see also Trapuzzano,* 223 N.E.3d at 288 ("Absolute judicial immunity . . . extends to persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer.").  Indeed, Ms. Clay admits that her public defender was appointed "by a state judicial officer."  Dkt. 130 at 9.  So even accepting Ms. Clay's allegations that her public defender was biased, his appointment was a judicial act, making the State of Indiana immune[2] from Ms. Clay's negligence and IIED claims.  *See Dawson v. Newman,* 845 N.E.2d 1076, 1081 (Ind. Ct. App. 2006) (rejecting the argument that sending certified copies of a sentence as required by statute was a mere "administrative duty," and therefore finding immunity from suit).

### 2. Defamation

For Ms. Clay's defamation claim, the State of Indiana argues that it is protected by a qualified privilege because the records at issue are public under Indiana law.  Dkt. 133 at 7; dkt. 182 at 2.  Ms. Clay responds that the State of Indiana does not have a "license to lie" in its public records.  Dkt. 177 at 3.

---

[2] Judicial immunity applies even though Ms. Clay has named the State of Indiana as the defendant, rather than the person who appointed her public defender.  *See Mendenhall v. Indianapolis,* 717 N.E.2d 1218, 1226 (Ind. Ct. App. 1999) (explaining that judicial immunity "look[s] to the nature of the function performed, not the identity of the person who performed it" and holding that the City of Indianapolis was immune for its officers' actions).

"Qualified privilege is a defense to a defamation action and applies to communications made in good faith on any subject matter in which the party making the communication . . . has a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty." *Bals v. Verduzco*, 600 N.E.2d 1353, 1356 (Ind. 1992). Here, the State of Indiana had a duty to make public records available. *See* Ind. Code § 5-14-3-1 *et seq.* ("[A]ll persons are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees."). And the public has a "corresponding interest" in accessing those records. *Bals*, 600 N.E.2d at 1356; *see Taylor v. Antisdel*, 185 N.E.3d 867, 874 (Ind. Ct. App. 2022) (explaining that criminal prosecutions are "matter[s] of public concern"). Ms. Clay cites no legal authority in support of her defamation claim based on the State of Indiana's publication of public records. *See* dkt. 177 at 3–5. And while Ms. Clay briefly argues that the State of Indiana acted with malice, *id.*, providing public access to public court records cannot support such a finding, *see Taylor*, 185 N.E.3d at 875.

Ms. Clay's claims against the State of Indiana are therefore **DISMISSED**.[3]

---

[3] Because the State of Indiana relies on defenses, it should have answered Ms. Clay's complaint and filed a motion for judgment on the pleadings under Rule 12(c). But that does not affect the standard of review or this Court's ability to address the issue, since the relevant facts have been presented with the complaint and motion to dismiss. *Walczak v. Chicago Bd. of Educ.*, 739 F.3d 1013, 1016 n.2 (7th Cir. 2014); *see Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). Because those defenses are dispositive, the Court does not address the State of Indiana's argument that Ms. Clay's claims against it are barred by law enforcement immunity under the Indiana Tort Claims Act. *See* dkt. 133 at 6–7.

### C. Indianapolis Defendants' Motion to Dismiss

Ms. Clay brings negligence; "false imprisonment, false arrest, and/or criminal confinement"; unreasonable search and seizure; defamation; and First Amendment religious expression claims against the City of Indianapolis and the Indianapolis Metropolitan Police Department.[4]  Dkt. 130 at 11–28. Because IMPD cannot be sued under Indiana law, *City of Peru v. Lewis*, 950 N.E.2d 1, 4 (Ind. Ct. App. 2011); Ind. Code § 34-6-2.1-155, and is not a "person" who can be sued under 42 U.S.C. § 1983 independently of the City of Indianapolis, *Lewis v. City of Chicago*, 496 F.3d 645, 645 n.1 (7th Cir. 2007), it is dismissed as a Defendant and the Court considers the claims against the City of Indianapolis.

For defamation—Ms. Clay's only state-law claim against Indianapolis—Indianapolis argues that Ms. Clay has not alleged enough detail to plausibly plead this claim.  Dkt. 139 at 6–7; s*ee Webber*, 923 F.3d at 480–81.  Ms. Clay responds that she has pleaded that Indianapolis published statements that she was "a 'threat to police' and 'unfit parent'" on its website.  Dkt. 176 at 2.  Ms. Clay has not alleged, however, what "documentation" Indianapolis may have

---

[4] Ms. Clay also names as defendants in their "official capacities" a "John Doe Transport Officer" who drove Ms. Clay to the Marion County Jail, and unnamed Marion County Jail employees "responsible for processing" Ms. Clay.  Dkt. 130 at 3. Because these are official, rather than individual, capacity claims, they are against Indianapolis under *Monell*.  *Sow v. Fortville Police Dept.*, 636 F.3d 293, 300 (7th Cir. 2011) (An official capacity suit "is another way of pleading an action against an entity of which the officer is an agent.").  These defendants are therefore dismissed as duplicative.  *See Stanek v. St. Charles Comm. Unit Sch. Dist. No. 303*, 783 F.3d 634, 640 (7th Cir. 2015).

published, including whether it was public records; when any publication occurred; or the context of any allegedly false statements. *See* dkt. 130 at 9, 24–26. She therefore has not plausibly pleaded a defamation claim against Indianapolis. *See McCauley*, 671 F.3d at 616 (Legal conclusions and conclusory allegations do not state a plausible claim.); *Integrity Kokosing Pipeline Servs., LLC v. Pipeliners Union 798*, No. 1:20-cv-2321-RLM-MG, 2021 WL 4194435 at *9 (S.D. Ind. Sept. 15, 2021) ("While the pleading does not need to incorporate the literal statement, a party asserting a defamation claim must provide some context as to when and how the allegedly defamatory statement was made to allow the defendant to form an appropriate response.").

Ms. Clay's remaining claims against Indianapolis are federal-law claims brought through 42 U.S.C. § 1983. *See* dkt. 130 at 11–28. Indianapolis "cannot be held liable for the constitutional torts of its employees or agents." *First Midwest Bank Guardian v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021) (explaining *Monell v. Dep't of Soc. Servs. Of City of N.Y.*, 436 U.S. 658 (1978)). Instead, the violation must have been caused by Indianapolis's own "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Id.* So, to plausibly plead a *Monell* claim, a plaintiff must allege that "(1) the [municipality] had an express policy that, when enforced, causes a constitutional deprivation; (2) the [municipality] had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law; or (3) plaintiff's

12

constitutional injury was caused by a person with final policymaking authority." *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000).

Indianapolis argues that Ms. Clay's *Monell* claims against it must be dismissed because she alleges only individual employees' actions, not harm from a municipal policy or custom. Dkt. 139 at 7–9. Ms. Clay responds that she has pleaded "standardized, system-wide practices that no individual officer could invent." Dkt. 176 at 2.

For her "false imprisonment, false arrest, and/or criminal confinement" and unreasonable search and seizure claims, Ms. Clay has not identified an express policy or widespread practice that led to her alleged constitutional violations. *See McCauley*, 671 F.3d at 615. She instead relies on the actions of the individual officer who transported her to the detention center after her arrest, and the actions of detention center staff who held her after her arrest and implemented her bond. *See* dkt. 130 at 16, 21.[5] Because, under *Monell*, "a plaintiff must challenge conduct that is properly attributable to the municipality itself," her allegations about individual officers' actions do not state a claim. *First Midwest Bank*, 988 F.3d at 986; *see Bd. of Cnty. Comm'rs. of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 398 (1997) (*Monell* "require[s] application of rigorous culpability and causation standards in order to ensure that the municipality is not held liable solely for its employee's actions.").

---

[5] Indianapolis disputes whether that officer was its employee, but because the allegation does not support a *Monell* claim the Court does not address that dispute. *See* dkt. 139 at 4–5.

While Ms. Clay briefly mentions a failure to train and a "'ransom' policy" in having to pay a $500 bond, dkt. 176 at 2, generic allegations without factual elaboration cannot support a *Monell* claim. *See McCauley,* 671 F.3d at 617, 619 (affirming dismissal of *Monell* claim that lacked "the factual heft required to survive a motion to dismiss"); *Latuszkin v. City of Chicago,* 250 F.3d 502, 505 (7th Cir. 2001) ("Without a link between the City and the alleged policy, no claim for municipal liability can survive."). Moreover, she does not allege that the bond was a city policy, rather than ordered by a judicial officer of the State of Indiana. *See* dkt. 130 at 16, 21.

That leaves Ms. Clay's First Amendment religious exercise claim, which alleges that the Marion County Jail's policy of collecting DNA from arrestees violated "her sincerely held religious beliefs and her right to religious expression." Dkt. 130 at 10, 26–28. Indianapolis argues that this claim must be dismissed because the Marion County Sheriff's Office, rather than Indianapolis, runs the jail and sets its policies. Dkt. 139 at 4–5, 7–8. Ms. Clay responds that under the consolidated city–county government, Indianapolis "sets overarching policy" for the jail. Dkt. 176 at 2.

The consolidation of Indianapolis and Marion County is "only partial," and the Marion County Sheriff runs the Marion County Jail. *Grieveson v. Anderson,* 538 F.3d 763, 770–71 (7th Cir. 2008) ("The Sheriff's Department has always remained a separate entity from the City of Indianapolis."); Ind. Code § 36-3-1-5.1 ("Notwithstanding any other law, an ordinance adopted under this section must provide that the county sheriff's department shall be responsible

14

for . . . [c]ounty jail operations and facilities."); *see Homes v. Marion Cnty. Sheriff*, No. 1:23-cv-1307-TWP-MJD, 2024 WL 2133976 at *2 (S.D. Ind. May 13, 2024). Ms. Clay cites no contrary authority. *See* dkt. 176.

Ms. Clay also has not alleged that Indianapolis was responsible for establishing or requiring a DNA-collection policy at the Marion County Jail, which it did not operate. *See* dkt. 130 at 10, 27–28; *First Midwest Bank*, 988 F.3d at 986 ("[A] plaintiff must challenge conduct that is properly attributable to the municipality itself."). And her bare argument in her response brief that Indianapolis "sets overarching policy" at the Jail is too vague to support a *Monell* claim. *See id.*; *McCauley*, 671 F.3d at 616 (Legal conclusions and conclusory allegations do not state a plausible claim.).

Ms. Clay's claims against the City of Indianapolis and the Indianapolis Metropolitan Police Department are therefore **DISMISSED**.

### D. Unidentified Defendants

Ms. Clay has named as Defendants unidentified "emergency medical technicians employed by or acting as agents of the City of Lawrence" and additional "officers of the Lawrence Police Department who were present at the scene." Dkt. 130 at 2–3.

Ms. Clay's claims against these unidentified defendants must be dismissed. *See Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999) ("[D]istrict courts have the power to screen complaints filed by all litigants, prisoners and nonprisoners alike, regardless of fee status."). The Seventh Circuit has explained that it is generally "pointless to include [an] anonymous defendant"

15

because "this type of placeholder does not open the door to relation back under Fed. R. Civ. P. 15, nor can it otherwise help the plaintiff." *Wudtke v. Davel*, 128 F.3d 1057, 1060 (7th Cir. 1997); *see Herrera v. Cleveland*, 8 F.4th 493, 497 (7th Cir. 2021). Claims against these defendants are dismissed without prejudice, so Ms. Clay may seek to file a new complaint with her allegations against these defendants if she learns their identities and believes it would not be futile. *See Troya v. Wilson*, 807 Fed. App'x 556, 560 (7th Cir. 2020) (unpublished).

## IV.
## Conclusion

Defendants' motions to dismiss are **GRANTED**. Dkt. [132]; dkt. [138]; dkt. [140]. The **Clerk is directed to terminate as Defendants** Axon Enterprise, State of Indiana, City of Indianapolis, Indianapolis Metropolitan Police Department, "City of Lawrence EMT," and "Indianapolis Metropolitan Police Department Inmate Transport Officer."

**SO ORDERED.**

Date: 7/28/2026

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

LUCRETIA CLAY
10242 John Jay Drive
Indianapolis, IN 46235

All electronically registered counsel

16